THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RORY CENTER, Defendant-Appellant.

First District (4th Division)   No. 1—87—1591

Opinion filed May 17, 1990.

Randolph N. Stone, Public Defender, of Chicago (Alison Edwards, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, William D. Carroll, Francis N. Scescke, and Kenneth W. Goff, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE McMORROW delivered the opinion of the court:

Following a jury trial, defendant was convicted of burglary and sentenced to a term of 15 years' imprisonment. On appeal, he contends (1) that he was denied a fair trial by (a) the admission of hearsay testimony which insinuated previous criminal activity by him and (b) the prosecutor's repeated references to a co-offender as a "juvenile"; and (2) that his sentence was excessive.

At trial, Officer Klodnicki testified that on November 8, 1986, he and his partner, Officer Gajewski, responded to a call of a burglary in progress at a laundromat on 156½ North Cicero Avenue in Chicago. When they arrived in their squadrol, they looked through the front window into the laundromat, which was fully lit, and saw the arm of an individual hanging down from a false ceiling. The individual had a screwdriver in his hand and was attempting to pry open a coin box on one of the machines. Gajewski remained at the window while he (Klodnicki) walked around to the north end of the building. As he turned the corner of the building, he saw two males lowering themselves from the roof. He radioed this information to other police units in the area, identified himself as a police officer and ordered the men to stop. Both men turned, looked at him and then ran off across the vacant lot next to the building. They were approximately 75 feet in

front of him as he chased them. A squad car arrived and drove across the lot and stopped just behind the two men. The officers exited their vehicle and began chasing the two men as they ran into an alley, which was illuminated by streetlights. Klodnicki terminated his pursuit of the men and returned to the laundromat. Upon entering, he saw that a portion of the ceiling had been knocked out. Gajewski climbed atop a machine and shone his flashlight into the hole in the ceiling, where they found a young man hiding. When they brought him down and searched him, they recovered a screwdriver with a bent blade and tar on it. He was later identified as Terrence Hopkins, a juvenile. As they exited the building with Hopkins, they saw the other two officers escorting defendant to the squadrol. Defendant, like Hopkins, had tar on his hands and jacket.

Officer Schulz testified that he and his partner, Officer Dennis Walsh, were in their marked squad car a few blocks from the laundromat when they received a call of a burglary in progress there. As they arrived on the scene, they saw two men come down from the roof and run away, with Officer Klodnicki in pursuit. They drove around the side of the building and across the adjoining vacant lot. When they came within approximately 10 feet of the men, they exited their vehicle and began chasing the men. Although the lighting conditions were very good, they momentarily lost sight of the men when they crossed the street and ran into a gangway. They split up and proceeded to search the area gangways and porches. Officer Schulz found defendant crouched on his side on the floor of a porch which was surrounded by a short brick wall. When he brought defendant to his feet, he noticed that defendant's heartbeat was rapid, he was breathing heavily and he had tar on his hands. As he escorted defendant back to the scene, he saw the other officer placing another individual into the squadrol. The second man seen running from the building was never apprehended.

Constantine Lee, the owner of the laundromat, testified, through a Korean interpreter, that he allowed a friend, Vernon Walker, to sleep in a back room of the laundromat on the night of the burglary. Before leaving the laundromat, at approximately 10:30 p.m., he locked all the doors. In response to a call from Walker, he returned to the laundromat at approximately 1:10 a.m. where he was met by police officers. He identified photographs of the scene and of the damage caused to the ceiling and the exhaust pipe on the roof.

Vernon Walker testified that he was awakened by noise which sounded like someone banging on pipes. He then heard a voice saying "This is how we came in here before," and, when he looked inside the

laundromat, he saw a person hanging down from a hole in the ceiling trying to pry open a coin box on one of the machines. After calling the police, he looked out the back window and saw two men running from the building, but he could not identify either man. When the police arrived, he indicated to them that a person (Hopkins) was hiding in the ceiling. He described Hopkins as appearing to be 16 or 17 years old.

Detective Richard Zeluga testified that he interviewed Hopkins and defendant together at the police station. After being informed of the charges against him and advised of his rights, defendant agreed to give a statement. Defendant said that he was with Hopkins when they met a man known as "Little Pete," who told them he knew of a place where they could break in easily and get some quick cash. The three of them climbed onto the roof of the laundromat and pried the vent cap open. In doing so, they had to remove some tar around the base of the pipe. While they were lowering Hopkins in through the ceiling, they saw a police car. Defendant and Little Pete then jumped off the roof and ran away. He was apprehended when one of the officers found him hiding on a porch.

The State then rested its case, whereupon defendant moved for a directed verdict. The trial court denied the motion as to the burglary charge but granted the motion on the charge of criminal damage to property for lack of sufficient evidence relating to the value of the damage to the roof. No evidence was presented on defense. The jury found defendant guilty of burglary, and defendant's post-trial motion for a new trial was denied. Following a hearing, the trial court found defendant eligible for Class X offender sentencing and imposed a sentence of 15 years' imprisonment. This appeal followed.

OPINION

Defendant first contends that he was denied a fair trial by the admission of Vernon Walker's testimony that he heard a voice saying "This is how we came in here before." Defendant argues that the statement was hearsay and that it prejudiced him by insinuating that he had also participated in a prior burglary of the laundromat.

■ The record reveals that defendant did not object to the testimony at trial nor was this issue raised in his post-trial motion. Issues not raised at the trial court level are deemed waived for purposes of review. *People v. Wade* (1989), 131 Ill. 2d 370, 546 N.E.2d 553.

■ ■ Moreover, in our view the testimony at issue was not inadmissible hearsay. As defendant correctly observes, "hearsay *** is *** an out-of-court statement offered to establish the truth of the

matter asserted therein, and resting for its value upon the credibility of the out-of-court asserter." (*People v. Rogers* (1980), 81 Ill. 2d 571, 577, 411 N.E.2d 223.) A reading of the entire trial transcript indicates that the statement was not offered to prove that defendant had participated in a prior burglary of the laundromat or even that a prior burglary had occurred. Rather, it was offered as part of the sequence of events related by Walker in describing what made him aware that a burglary was taking place, that there was more than one participant and their means of entry. Nothing in Walker's testimony identified defendant as the speaker so as to imply that he had previously burglarized the building. In fact, the jury reasonably could have believed that the statement was made by one of the other offenders *to* defendant, which would lead to the conclusion that he had not been involved in any prior burglary of the building. (See *People v. Billingsley* (1989), 184 Ill. App. 3d 142, 539 N.E.2d 1302.) Before invoking the plain error exception, as defendant urges us to do, it should be determined whether error occurred at all. (*People v. Wade* (1989), 131 Ill. 2d 370, 546 N.E.2d 553.) Since we do not agree that the testimony was inadmissible hearsay, the plain error rule is inapplicable here.

▆ Further, it is well settled that the purposes of the plain error rule are to correct serious injustices and to preserve the integrity of the judicial process. (*People v. Young* (1989), 128 Ill. 2d 1, 538 N.E.2d 453.) The criterion for application of the plain error rule in criminal cases is whether the evidence is so closely balanced or the error was of such magnitude as to have affected substantial rights and denied the defendant a fair trial. (*People v. Young* (1989), 128 Ill. 2d 1.) Thus, even if we were to agree with defendant's assertion that the statement was hearsay which should have been excluded, in light of the evidence against defendant, the sufficiency of which he does not challenge on appeal, any error in its admission was harmless beyond a reasonable doubt. See *People v. Gaines* (1982), 88 Ill. 2d 342, 430 N.E.2d 1046.

Defendant next contends that repeated references to Terrence Hopkins as a "juvenile" during the trial were so prejudicial as to deny him a fair trial. He argues that Hopkins' age was irrelevant and that the numerous references to his youth were used to inflame the jury by intimating that defendant "was a bad character with a propensity to commit crimes" and that he "exploited and corrupted youngsters in his criminal schemes."

▆ Defendant acknowledges that the issue was not properly preserved for review. He once again maintains, however, that the waiver rule should not apply because the cumulative effect of these refer-

ences, together with the admission of Walker's statement insinuating his involvement in a previous burglary improperly, suggested that he was a bad character with a propensity to commit criminal acts and resulted in substantial prejudice to him. He therefore urges us to apply the plain error exception to the waiver rule. We have already enunciated the purpose and criterion for application of the plain error doctrine and need not restate those principles here. It suffices to say that we have considered those principles and, for the reasons enunciated, we find that invocation of the plain error doctrine is not appropriate in this case.

■ It is fundamental that the admission of evidence is within the sound discretion of the trial court, whose rulings will not be disturbed absent an abuse of discretion. (*People v. Ward* (1984), 101 Ill. 2d 443, 463 N.E.2d 696.) It is equally fundamental that a defendant who fails to bring alleged errors to the attention of the trial court by way of objections and in his post-trial motion so as to give the trial court the opportunity to prevent or correct any alleged errors at trial should not gain the advantage of obtaining a reversal through that failure to act, whether such failure is intentional or inadvertent. *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233; *People v. Wilson* (1985), 139 Ill. App. 3d 726, 487 N.E.2d 1015.

■ Defendant cites 18 instances at trial when Hopkins' youth was mentioned either by the prosecutor or in the testimony of witnesses. A review of the record also establishes, however, that defense counsel only once objected, when Hopkins was initially referred to as a "youth"; that counsel immediately withdrew the objection; and that defendant failed to raise this issue in his post-trial motion. In addition, the record reveals that in challenging the sufficiency of the evidence during closing argument, defense counsel noted that the screwdriver used in the commission of the burglary was not found in defendant's possession but, rather, "was taken off a juvenile that was caught inside." Clearly, defendant has waived any alleged error relating to the references to Hopkins' age.

Moreover, even absent defendant's waiver we do not believe that the references to Hopkins' age were designed to inflame the jury or that they had any such inflammatory effect. Defendant himself was only 23 years old at the time of the offense. In view of defendant's own youthful age, we do not believe that the references to Hopkins being a juvenile could have so inflamed the jury as to cause it to convict defendant on the grounds that he had a bad character and criminal nature and that he exploited and corrupted youngsters in his criminal schemes.

To the contrary, we believe that the jury's verdict was the only reasonable one it could have returned based on the evidence adduced at trial. As noted earlier, that evidence included testimony that defendant was found hiding on a porch a very short distance from the location of the burglary; that when apprehended, he was breathing heavily, his heartbeat was rapid and he had tar on his hands and clothes; and that, following his arrest, he confessed his complicity in the crime. We find no basis for reversal of defendant's conviction.

Defendant's final contention is that his 15-year sentence is excessive. He does not dispute the trial court's finding that, by reason of two prior Class 2 felony convictions, he was eligible for sentencing as a Class X offender. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1(a)(3).) He maintains, however, that the trial court did not give adequate consideration to the numerous factors in mitigation and as a result imposed an excessively harsh sentence.

■ It is correct, as the State argues, that the sentencing judge is in the best position to consider matters relating to sentencing determinations and is vested with wide discretion in making a reasoned judgment as to the penalty appropriate to the particular circumstances of each case. (*People v. O'Neal* (1988), 125 Ill. 2d 291, 531 N.E.2d 366.) Thus, the judge's ultimate sentencing decision is entitled to substantial weight and deference. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) However, as the supreme court noted in *People v. O'Neal* (1988), 125 Ill. 2d 291, that discretion is not unfettered. A reviewing court has the power and authority under Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)) to reduce a sentence imposed by the trial court where it is found to have constituted an abuse of discretion. As the *O'Neal* court stated, "the mere fact that the trial court has a superior opportunity to make a determination concerning final disposition and punishment of a defendant does not imply that a particular sentence imposed is always just and equitable." *O'Neal*, 125 Ill. 2d at 298.

■ It is axiomatic that an abuse of discretion occurs where the sentence exceeds the limits prescribed by statute. (*E.g., People v. Rodarte* (1989), 190 Ill. App. 3d 992, 547 N.E.2d 1256.) However, an abuse of discretion may be found even if the sentence is within the statutory limitations if such sentence is greatly at variance with the purpose and spirit of the law. *People v. Steffens* (1985), 131 Ill. App. 3d 141, 475 N.E.2d 606; *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 364 N.E.2d 491.

■ The Illinois Constitution requires that penalties be determined both according to the seriousness of the offense and with the

objective of restoring the offender to useful citizenship. (Ill. Const. 1970, art. I, §11.) This constitutional mandate calls for the balancing of the retributive and rehabilitative purposes of punishment. (*People v. Newell* (1990), 196 Ill. App. 3d 373; *People v. Streiter* (1990), 193 Ill. App. 3d 443, 550 N.E.2d 244; *People v. Gibbs* (1977), 49 Ill. App. 3d 644, 531 N.E.2d 366.) This balancing process requires careful consideration of all factors in aggravation and mitigation, including, *inter alia*, the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it. *E.g., People v. O'Neal* (1988), 125 Ill. 2d 291, 532 N.E.2d 366; *People v. Newell*, 196 Ill. App. 3d 373; *People v. Streiter* (1990), 193 Ill. App. 3d 443, 550 N.E.2d 244.

Moreover, the Illinois Supreme Court has stated that sound public policy demands that sentences be varied in accordance with the particular circumstances of the specific crime committed. Certain types of criminal conduct may warrant different penalties even though the offenses technically are punishable under the same statute. Thus, while the statutory classification of a crime determines the range of permissible sentences, the severity of the sentence within that range depends largely upon the degree of harm caused. *People v. Saldivar* (1986), 113 Ill. 2d 256, 497 N.E.2d 1138.

Burglary is a Class 2 felony (Ill. Rev. Stat. 1987, ch. 38, par. 19—1(b)). As such, it is punishable by three to seven years' imprisonment. (Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—1.) An extended term of 7 to 14 years may be imposed where "a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—3.2(b)(1).) Additionally, the Unified Code of Corrections provides that "[w]hen a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted of any Class 2 or greater Class felonies in Illinois *** such defendant shall be sentenced as a Class X offender." (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8).) The range of permissible sentences under this provision is 6 to 30 years.

At the sentencing hearing the State presented defendant's criminal record containing two prior Class 2 felony convictions. The first conviction, at age 19, was for the robbery of a bicycle from a nine-year-old boy. Defendant's second conviction, six months later, was for a burglary which, according to the statements by the prosecutor, involved the same laundromat for which he was convicted in this case.

The State presented no other factors in aggravation.

Following arguments by counsel, the trial judge discussed the Class X sentencing provision, stating that it was not limited to conduct of an outrageous nature but was enacted for purposes of deterrence of crime, and that it was applicable in the instant case. The judge then stated, without enumeration or elaboration, that he had considered all the factors raised in argument and in the presentence investigation report and imposed a sentence of 15 years.

A review of the defendant's personal history revealed that he had reached the age of 23 just a few days before the offense; he had been raised in a normal home environment and maintained stable ties with his family; he graduated from high school when he was 18 years old; he was employed as a binder at a printing company for two years prior to this offense; he had been accepted into a firefighter-paramedic training program with the Markham fire department, and at the time of sentencing had completed four weeks of that training; and he denied using drugs or alcohol.

Regarding the circumstances of the offense, the evidence showed that the place of the burglary was a laundromat which had been closed for the night; that defendant's role in the offense appeared to be primarily that of a lookout on the roof of the laundromat; that no proceeds were obtained in the burglary; and that neither this offense nor the two prior offenses which rendered him eligible for Class X sentencing involved or resulted in any bodily harm to anyone.

Applying the principles discussed earlier, we are constrained to agree with defendant that this sentence is excessive. We believe that in the particular circumstances of this case, the court did not give adequate weight to the mitigating factors or properly balance the retributive and rehabilitative purposes of incarceration in imposing sentence. We are mindful that defendant was eligible for either extended-term or Class X sentencing, and we do not minimize the seriousness of the crime of burglary. However, the 15-year term imposed is nine years more than the minimum Class X sentence (six years) and one year more than the maximum extended sentence for burglary (14 years). By way of further comparison, we note that defendant's sentence is equal to the maximum term for voluntary manslaughter, a Class 1 felony; and that other Class 1 and Class 2 felonies which render a defendant eligible for Class X sentencing by reason of recidivism include arson, robbery, aggravated criminal sexual abuse (Class 2), criminal sexual assault, residential burglary, aggravated kidnapping other than for ransom and, as noted above, voluntary manslaughter (Class 1).

■■ In summary, we do not believe that defendant's 15-year sentence for a foiled Class 2 burglary which was enhanced to Class X status by reason of his previous convictions for Class 2 burglary and the robbery of a bicycle is in conformance with the spirit or the purpose of the law. Defendant's personal background indicates that he possesses the capability and potential for rehabilitation. Whether he will return to society to live a useful, law-abiding life is a decision only he can make. However, we do not believe that incarceration for the period imposed in this case is one which furthers the objectives of rehabilitation and restoration to useful citizenship.

Consequently, pursuant to the authority granted us in Supreme Court Rule 615(b)(4) (107 Ill. 2d R. 615(b)(4)), we hereby reduce defendant's sentence to seven years.

The judgment of the trial court is affirmed as modified.

Affirmed as modified.

JIGANTI and JOHNSON, JJ., concur.