# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*People v. Lampley*, 2011 IL App (1st) 090661-B

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. BRUCE LAMPLEY, Defendant-Appellant. |
| District & No. | First District, Third Division<br>Docket No. 1-09-0661 |
| Filed | December 14, 2011 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Defendant's sentence to 14 years' imprisonment as a Class X offender for burglary was upheld over his contentions that the trial court interfered with his right to testify by deferring its ruling on his motion *in limine* to bar evidence of his prior convictions, failed to properly question prospective jurors about the *Zehr* principles, imposed an excessive sentence, and imposed a three-year term of mandatory supervised release rather than a two-year term, since any error in delaying a ruling on defendant's motion was harmless beyond a reasonable doubt, the failure to comply with Supreme Court Rule 431(b) was not reversible error, defendant's sentence was not an abuse of discretion, and the MSR term for Class X offenses attached to the sentence imposed on defendant. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 07-CR-24455; the Hon. Michael Brown, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Michael J. Pelletier, Patricia Unsinn, and Jessica Wynne Arizo, all of State Appellate Defender's Office, of Chicago, for appellant. |
|---|---|
| | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Carol L. Gaines, and Molly E. Donnelly, Assistant State's Attorneys, of counsel), for the People. |
| Panel | JUSTICE MURPHY delivered the judgment of the court, with opinion. Justices Quinn and Steele concurred in the judgment and opinion. |

**OPINION**

¶ 1    Following a jury trial, defendant, Bruce Lampley, was found guilty of burglary (720 ILCS 5/19-1 (West 2006)). Based on his criminal history, and pursuant to the Unified Code of Corrections (730 ILCS 5/5-5-3(c)(8) (West 2006)), defendant was sentenced as a Class X offender to 14 years' imprisonment. On appeal, defendant contends that: (1) the trial court interfered with his right to testify when it deferred ruling on his motion *in limine* to bar the introduction of his prior convictions; (2) the trial court failed to properly question potential jurors as to whether they understood and accepted the principles outlined in *People v. Zehr*, 103 Ill. 2d 472 (1984), and Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b) (eff. May 1, 1997)); (3) the trial court imposed an excessive sentence; and (4) the trial court erred in imposing a three-year term of mandatory supervised release (MSR) instead of a two-year term as required for Class 2 felonies.

¶ 2    Our supreme court entered a supervisory order directing this court to vacate our prior holding and reconsider the judgment in light of *People v. Mullins*, 242 Ill. 2d 1 (2011). That judgment was vacated. For the following reasons, we affirm defendant's convictions and sentence.

¶ 3                  I. BACKGROUND

¶ 4    Defendant was arrested on November 12, 2007, for burglary and possession of burglary tools. Defendant elected to proceed to a jury trial on the charges. The State moved to nol-pros the possession of burglary tools charge and proceeded to trial on the one count of burglary. During jury selection, when the venire was brought into the courtroom, the trial court admonished the entire panel on several concepts and principles of law. In particular, prior to swearing in and questioning the venire, the trial court advised:

"In other words, the expression 'where there's smoke, there's fire' has no place in a court of law.

In fact, under our law a defendant is presumed to be innocent of the charges against

him in the indictment.

This presumption of innocence remains with the defendant throughout every stage of the trial and during your deliberations on a verdict. It must be kept in your mind at all times during the presentation of evidence.

This presumption of innocence is not overcome unless from all of the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The defendant is not required to prove his innocence, nor is he required to testify or present any evidence whatsoever on his behalf.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout every stage of the trial and during your deliberations on a verdict."

¶ 5 Following a lunch break, the jury panel was sworn and questioning of the venire began. The trial court immediately proceeded by asking "four questions of all of you at the same time." The court requested that the prospective jurors stand if their answers to any of the questions were in the affirmative. The trial court asked the venire if they knew any of the parties or attorneys involved and whether they were currently involved in any litigation. After excusing two prospective jurors involved in litigation, the trial court continued to query the venire as follows:

"Folks, the third question is this: As I have previously stated, the defendant is presumed innocent and does not have to offer any evidence on his own behalf but must be proven guilty beyond a reasonable doubt by the State.

Does anyone here have any problems with those concepts? If so, please stand up?

* * *

Folks, the fourth and final question for you is this: As I have also previously stated, the defendant does not have to testify on his own behalf.

If the defendant decides not to testify, you must not hold that decision against the defendant.

If the defendant decides not to testify, is there anyone here who believes that, regardless of what I have just said, you would hold that decision against the defendant? If so, please stand up.

Let the record reflect that no one has stood up."

¶ 6 The jury was selected and sent home to return the next day for trial. Before the jury was called, the trial court considered defendant's motion *in limine* to bar the use of evidence of defendant's five prior convictions for burglary to impeach his credibility. The trial court stated that it would enter and continue the motion until the close of the State's case, because at that point a prior ruling would be "advisory" and was not warranted.

¶ 7 The State presented the testimony of Sharon Handelsman. Handelsman, a resident physician, testified that on the morning of November 12, 2007, she parked her 1996 Geo Prism in the Rush Presbyterian Hospital parking garage. After parking, she placed her purse in the trunk of her car and closed and locked the trunk and doors of her car before going into the hospital to work her shift. Handelsman testified that she returned to her vehicle at

approximately 4:30 p.m. and could not open the trunk of her car with her key. She entered her car, opened the trunk with the latch release inside her car, and retrieved her purse from the trunk. She then discovered that her cell phone and wallet (containing her driver's license, cash and credit cards) were missing.

¶ 8      Handelsman testified that she drove toward the exit and asked the parking attendant to notify the security office that those items were missing from her purse. She spoke with a security officer and parked her vehicle at the side of the parking garage. Handelsman was escorted to the security office, where the officers showed her the items that were stolen. She then left the garage, leaving her car there for security to investigate.

¶ 9      Dennis Garden, a security guard at the parking garage testified that at 4:35 p.m. on November 12, 2007, he saw a man he identified as defendant carrying a backpack and exiting the parking garage. Defendant walked west on West Harrison Street and continued to walk when Garden called for him to stop. Garden called the dispatcher to report defendant's appearance and location.

¶ 10      Edward Altman, another security officer at the parking garage, testified that he saw defendant, who matched the description given by Garden, crossing West Harrison Street. Altman stopped defendant at the northwest corner of the intersection of West Harrison Street and South Wood Street. Altman testified that when he asked to look in defendant's backpack, defendant allowed him to do so. Altman found women's jewelry and a half-open wallet that displayed a white woman's driver's license. Altman testified that other officers arrived on the scene and he then placed defendant in custody and handcuffed him. Altman patted down defendant and discovered a razor knife in his pocket. At the security office, the officers also discovered a camera, a CD player, cellular phone, screwdriver, and CDs in defendant's bag.

¶ 11      Altman testified that the driver's license in the bag belonged to Handelsman. Handelsman arrived later at the security office and identified the wallet and cellular phone as hers. She stated that the items had been taken that day from the trunk of her car. Altman testified that the security officers contacted Chicago police.

¶ 12      The State also presented evidence concerning a fingerprint lift taken from the trunk of Handelsman's car on November 12, 2007. The latent fingerprint was compared with a known fingerprint standard of defendant. The ridge details of the two fingerprints were found to be a match. Additionally, a videotape taken from the parking garage video surveillance system was offered into evidence. The video depicted an African-American man wearing a baseball cap and backpack walk toward Handelsman's car, open the trunk, enter the trunk, stand up with his backpack and walk away from the vehicle. Later, the videotape showed a white female approach the vehicle, have difficulty opening the trunk, and then pop the trunk from inside the vehicle. Due to the grainy quality of the image, no positive identification could be made with the video.

¶ 13      The State rested and defendant moved for a directed verdict. The trial court denied the motion and considered defendant's motion *in limine* to bar the introduction of prior convictions. The State indicated that, if defendant took the stand, it would seek to introduce evidence of defendant's 2001 conviction for burglary in order for the jury to properly weigh defendant's credibility. The trial court rejected defendant's argument that evidence of the

conviction was too prejudicial and denied the motion. The court recognized the prejudicial impact as the prior conviction was for the same kind of crime, but since it occurred within 10 years and had probative value as a crime of dishonesty, the use of proper jury instructions could minimize that prejudice.

¶ 14    Defendant chose to testify. Defendant testified that he was homeless and on November 11, 2007, he had slept at the Rush Presbyterian Hospital parking garage and as he was leaving the garage, defendant found a wallet and cellular telephone on the ground. Defendant put them in his backpack, which already contained DVD movies, CDs, earrings, a Palm Pilot, a Nikon camera, watches and other items. As he left, defendant passed one officer and then another officer. The second officer stopped him and asked to look into his backpack. Defendant testified he was taken into custody and eventually transported to the police station about 1.5 hours later.

¶ 15    Defendant testified that when he arrived at the police station, a uniformed police officer driving a gold GMC vehicle pulled up next to the squad car that he was in. The officer got out of the car, walked to the trunk and removed defendant's backpack. Defendant testified that he was let out of the squad car and he and the two other officers stood at the rear of the gold GMC talking. While they talked, defendant leaned against the GMC vehicle. Defendant denied stealing the wallet and cellular phone.

¶ 16    On rebuttal, the State presented the testimony of Officer Donald Verdon. Verdon testified that he drove Handelsman's car to the police station and parked 50 to 60 feet from the squad car containing defendant. Verdon testified that when he arrived, defendant had already been escorted into the police station. Verdon further testified that defendant did not touch the trunk of Handelsman's vehicle at any time in his presence.

¶ 17    The jury found defendant guilty. Defendant filed a motion for new trial, the motion was denied, and defendant was sentenced. The parties offered arguments in aggravation and mitigation. The State cited to defendant's extensive history of burglary convictions and lack of rehabilitation despite years in prison and a lack of truthfulness in his postsentence investigation interview where he denied a past drug problem. The State sought the mid to upper range of the statutory provision for Class X felonies of 6 to 30 years. Defendant conceded that he was eligible to be sentenced as a Class X felon, but argued in mitigation that his current conviction was not for an act of violence and that his prior convictions were almost all over 10 years old. The trial court considered the factors and sentenced defendant to 14 years' imprisonment. Defendant filed a motion to reconsider sentence, which was denied, and this appeal followed.

¶ 18                                  II. ANALYSIS
¶ 19                          A. Defendant's *Montgomery* Motion
¶ 20    Defendant first argues that the trial court erred when it deferred ruling on his motion *in limine* seeking to bar the State from introducing his 2001 conviction for burglary for purposes of impeachment. The trial court did not conduct the balancing test pursuant to *People v. Montgomery*, 47 Ill. 2d 510, 516 (1971), until after the State rested its case. Defendant did not include this issue in his posttrial motion and the State argues that this issue

was not preserved for review. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Defendant argues that his claim should be considered under plain-error review. *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

¶ 21   The plain-error doctrine allows a reviewing court to review an unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. *Id.* Under the first prong, the defendant must show that the evidence at trial was so closely balanced that the error alone "threatened to tip the scales of justice against him." *Id.* at 187. For the second prong, the defendant must prove that the error was so serious that it affected the fairness of the trial and questions the integrity of the judicial process. *Id.* at 187.

¶ 22   We first must determine whether the trial court committed any error at all. Defendant argues that the trial court's decision to defer ruling on his motion *in limine* limited his ability to proactively deal with his prior convictions during opening arguments. Furthermore, defendant argues that his credibility was absolutely crucial to his case. His presentation of the facts–that he simply found the wallet and cell phone–was diametrically opposed to the State's theory of what happened. Therefore, defendant contends that establishing his credibility was essential and required ruling on his motion at the earliest possible moment.

¶ 23   Defendant argues that *People v. Patrick*, 233 Ill. 2d 62 (2009), holds that when a trial court has sufficient information but fails to make a ruling on a motion *in limine* concerning the admissibility of prior convictions, it commits reversible error. In *Patrick*, the trial court followed a blanket policy in every criminal case in refusing to rule on the defendant's motion *in limine* on the admissibility of prior convictions until after the defendant testified. *Id.* at 74. Our supreme court found that the defendant was unjustifiably required to make a tactical decision without the ability to evaluate the impact it would have on his defense, for which the defendant's testimony was critical. *Id.* at 75. Because the trial court's refusal was not based on any specific facts, but purely due to the blanket policy, "the trial court abused its discretion by refusing to exercise any specific discretion." *Id.* at 74.

¶ 24   While the trial court in this case did not follow an absolute blanket policy and ruled on defendant's motion at the close of the State's case-in-chief, defendant points to the *Patrick* court's discussion of the impact on a defendant of deferring such a decision. He argues that he was prejudiced by having to make tactical decisions, such as whether to introduce evidence of his prior convictions during opening arguments to lessen the prejudicial effect of them, without the ability to evaluate the impact on his defense. See *Id.* at 75. Defendant argues that this court has followed *Patrick* in cases such as *People v. Hogan*, 388 Ill. App. 3d 885, 891-94 (2009), and *People v. Hernandez*, 394 Ill. App. 3d 527, 533 (2009), and asserts this emerging line of case law supports a finding that the trial court abused its discretion.

¶ 25   The State responds that *Patrick* only stands for the proposition that a defendant has a right to have all of the relevant information before he chooses to exercise his constitutional right to testify, not after he testifies. The State asserts that the trial court complied with *Patrick* by deciding defendant's motion *in limine* before defendant decided whether or not to testify and, therefore, no error was made. The State adds that, in considering the prejudice

to a defendant in this situation, our supreme court has recently added to this discussion and consideration of *Patrick* in *People v. Averett*, 237 Ill. 2d 1 (2010). Following *Patrick*, the *Averett* court concluded that deferring ruling until after the defendant testified was an abuse of discretion, but that did not warrant reversal as a violation of defendants' constitutional rights to testify because the error was harmless beyond a reasonable doubt. *Id.* at 18.

¶ 26    As noted above, subsequent to this court's original opinion, our supreme court issued its opinion in *People v. Mullins*, 242 Ill. 2d 1 (2011), which considered *Patrick* and *Averett*. The *Mullins* court stated that *Patrick* and *Averett* recognized that reserving ruling on a motion *in limine* to exclude prior convictions for impeachment constitutes an abuse of discretion–absent "rare cases." (Internal quotation marks omitted.) *Id.* at 21. The court highlighted that *Averett* clarified *Patrick*, noting that the reserved-ruling error was serious, but not structural. As such, automatic reversal is unwarranted and a court of review must determine whether the error in delaying ruling was harmless beyond a reasonable doubt. *Id.* at 22-23. Under this standard, the State has the burden to prove beyond a reasonable doubt that the error did not affect the outcome of the proceeding. *Id.* at 23. The reviewing court will consider: the defendant's need to testify in order to present a defense; whether the parties mentioned the defendant's prior conviction during argument; and the strength of the evidence against the defendant. *Id.* at 23-24.

¶ 27    In this case, defendant's theory of the case was that he found the wallet and cellular telephone on the ground and that he leaned on Handelsman's car at the police station, leaving the fingerprint the police identified as his. This testimony was the only way to present defendant's explanation for possessing Handelsman's wallet and phone. In addition, it was the only way to try and explain his fingerprint on the vehicle. As for the second factor, the parties did not improperly raise the argument concerning the defendant's credibility due to the fact he had been convicted on a prior occasion.

¶ 28    Most importantly, as argued by the State, the evidence in this case was overwhelming against defendant. The State presented testimony from the security guards who apprehended defendant and searched his backpack, as well as testimony from Handelsman, who identified the stolen items. The surveillance video that showed a man dressed like defendant go into the trunk of Handelsman's car was presented, as well as video that corroborated Handelsman's testimony that she was unable to access her trunk with her key when she returned to her car. Evidence of a fingerprint lifted from the trunk of Handelsman's car that matched defendant's prints was also presented. Defendant testified that he found the items in his backpack, but the State's evidence rebuts defendant's theory. If the court's error were removed, the result at retrial would have been the same; therefore, the trial court's error in delaying ruling was harmless beyond a reasonable doubt.

¶ 29                              B. Supreme Court Rule 431(b)

¶ 30    Next, defendant argues that his conviction should be reversed because the trial court did not properly question prospective jurors about the principles enumerated in *People v. Zehr*, 103 Ill. 2d 472 (1984), and required pursuant to Supreme Court Rule 431(b) (Ill. S. Ct. R. 431(b)). In *Zehr*, our supreme court held that "essential to the qualification of jurors in a

criminal case is that they know" that the defendant: (1) is presumed innocent; (2) is not required to offer any evidence on his own behalf; (3) must be proved guilty beyond a reasonable doubt; and (4) may decide not to testify on his own behalf and that cannot be held against him. *Zehr*, 103 Ill. 2d at 477. It follows that this qualification must come at the outset of trial because if a juror has a bias against any of these basic guarantees, an instruction given at the end of the trial will have little effect. *Id.* at 477. Rule 431(b) was amended in 2007 to impose a *sua sponte* duty on the trial court to question each individual juror as to whether he or she understands and accepts the *Zehr* principles. *People v. Gilbert*, 379 Ill. App. 3d 106, 110 (2008).

¶ 31    The State argues that defendant forfeited this issue by failing to object at trial or raise the issue in his posttrial motion and defendant again argues that this issue should be considered under plain-error review. In numerous recent cases, this court has applied the reasoning of *People v. Glasper*, 234 Ill. 2d 173 (2009), to the amended version of Rule 431 in concluding the error at trial was not structural and, therefore, not subject to automatic reversal. See *People v. Magallanes*, 397 Ill. App. 3d 72, 94-97 (2009). Our supreme court recently affirmed this conclusion and held that such an error does not necessarily render a trial fundamentally unfair or unreliable and does not require automatic reversal. *People v. Thompson*, 238 Ill. 2d 598, 611 (2010).

¶ 32    In *Thompson*, the trial court violated Rule 431(b) in that it failed to question the prospective jurors on the third principle and whether they accepted the first principle. *Id.* at 607. While compliance with Rule 431(b) is certainly important, the *Thompson* court determined, as in *Glasper*, that this was not a structural error requiring reversal. *Id.* at 611. Since the defendant forfeited appellate review of this issue by failing to object at trial or raise the issue in his posttrial motion, the court also considered the forfeiture rule and plain-error doctrine. It concluded that, where there is no compelling reason to relax the forfeiture rule, such as evidence of a biased jury, the plain-error rule may be followed to allow review of a defendant's claim of a 431(b) violation. *Id.* at 612.

¶ 33    Having determined the trial court erred in failing to comply with Rule 431(b) and the defendant did not argue that the evidence was closely balanced, the court considered whether the error was so serious it affected the fairness of the trial. The court noted that the amended rule does not indicate that compliance is indispensable for a fair trial. Therefore it found that the holding in *Glasper* stands and a violation does not implicate a fundamental right or constitutional protection. *Id.* at 614-15. Defendant did not present any evidence of jury bias and therefore failed to meet his burden of showing that the error affected the fairness of his trial and did not satisfy the second prong of plain-error review. *Id.* at 615. The court concluded by declining the defendant's request for a bright-line rule of reversal for every violation of Rule 431(b). *Id.* at 616.

¶ 34    In the instant case, defendant forfeited this issue and has not presented a compelling reason to relax that rule. Therefore, we first consider whether the trial court erred. Rule 431(b) provides as follows:

"[T]he court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed

innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

The court's method of inquiry shall provide each juror an opportunity to respond to specific questions concerning the principles set out in this section." Ill. S. Ct. R. 431(b).

¶ 35    In this case, the parties agree that the trial court admonished the entire panel on the four factors. However, defendant argues that it is clear that the trial court failed to comply with Rule 431(b) as "it is simply not enough to recite the principles and ask a question about them." We agree with defendant that this failure to ask more than whether any of the venire had "any problems with those concepts" was error. The trial court in the instant case admonished the venire on each of the *Zehr* principles and asked if the prospective jurors had "any problems" with the principles. We agree that the trial court should have followed a straightforward questioning of the *Zehr* principles as outlined by Rule 431(b) and, as a result, committed error. Pursuant to *Thompson*, we do not find that the trial court's approach requires automatic reversal; rather, we conduct a plain-error review.

¶ 36    In applying the first prong of the plain-error rule, we have already concluded that the evidence against defendant was overwhelming and defendant's argument that the evidence was closely balanced is rejected. For the second prong, the failure to specifically question each juror on each individual principle was not so serious to overcome the overwhelming evidence. The jury was questioned on all four principles. While the trial court could have done a better job complying with the spirit of Rule 431(b) to assure understanding and acceptance of each principle, this was not reversible error.

¶ 37    The record indicates that not only were the prospective jurors admonished of the principles, they were given a clear opportunity to speak. No evidence or questions of bias were raised by either party regarding any of the jurors. Accordingly, not only was the evidence overwhelming, but the jury was apprised of the principles, and questioned sufficiently to elicit comments. There was no error so serious to question the fairness of defendant's trial and require reversal.

¶ 38                              C. Excessive Sentence

¶ 39    Next, defendant argues that the trial court abused its discretion in sentencing him to a term of 14 years' imprisonment. For sentencing issues, we consider whether the trial court abused its discretion in handing down a sentence. *People v. Shaw*, 278 Ill. App. 3d 939, 953 (1996). As defendant notes, it is imperative that the trial court carefully consider the personal history of the defendant and the nature and circumstances of the crime in imposing a sentence. *People v. Maldonado*, 240 Ill. App. 3d 470, 485-86 (1992). However, as the sentencing court is in the best position to analyze these factors as well as the defendant's credibility, demeanor, general moral character, mentality, social environments, habits, age, and potential for rehabilitation, great deference is granted its decision. *People v. Ramos*, 353

Ill. App. 3d 133, 137 (2004).

¶ 40    Defendant asserts that this deference is not unfettered and notes this court has not shied away from reversing a sentence where factors have not been considered, even where the sentence imposed lies within the statutory guidelines. He cites *People v. Steffens*, 131 Ill. App. 3d 141, 151-53 (1985), *People v. Center*, 198 Ill. App. 3d 1025, 1032-35 (1990), and *People v. Gibbs*, 49 Ill. App. 3d 644, 648 (1977). In fact, as highlighted by the *Center* court, our constitution mandates balancing of the retributive and rehabilitative purposes of punishment by considering the nature of the offense with the objective of restoring the offender to useful citizenship. *Center*, 198 Ill. App. 3d at 1032-33 (citing Ill. Const. 1970, art. I, § 11). Nevertheless, where the factors have been considered, it is within the trial court's discretion to determine what significance is given to each aggravating and mitigating factor. *People v. Saldivar*, 113 Ill. 2d 256, 272 (1986). Unless the sentence is grossly disproportionate to the nature of the offense committed, the sentence should be affirmed. *People v. Phillips*, 265 Ill. App. 3d 438, 449 (1994).

¶ 41    Defendant argues that the trial court ignored several mitigating factors, in particular that his offense did not involve violence or a threat of harm and the "minimal proceeds" of the burglary were returned to the victim. He contends that this case is similar to *Center*, where the defendant was eligible for sentencing as a Class X offender based on two prior Class 2 felony convictions. *Center*, 198 Ill. App. 3d at 1032. In *Center*, the defendant had been convicted four years' earlier, at age 19, of the robbery of a bicycle from a 9-year-old boy and for the burglary of the same laundromat for which his conviction at issue involved. Defendant was sentenced as a Class X felon to 15 years' imprisonment with the trial court stating, without elaboration, that it had considered all the factors raised. *Id.* at 1034.

¶ 42    This court found the term imposed excessive as it was nine years more than the minimum for Class X felonies and one year more than the maximum extended sentence for the crime. The court noted that the circumstances of the offense showed the laundromat was closed, the defendant was a lookout, no proceeds were obtained, and none of defendant's convictions involved or resulted in bodily harm. Furthermore, the court cited to defendant's personal background of being raised in a normal home environment, a high school graduate, employed, and accepted into a firefighter-paramedic training program. Accordingly, the court concluded that a 15-year sentence did not further the objectives of rehabilitation and restoration to useful citizenship. *Id.* at 1035.

¶ 43    In this case, defendant notes that his criminal history, though more extensive than the defendant's in *Center*, is also entirely nonviolent. He notes that his history does not paint the picture of a dangerous criminal, but of a nonviolent homeless man who erred in breaking into the trunk of a car. He asserts that this sentence, more than quadruple of his prior sentence, is excessive and does not serve the purpose of rehabilitation.

¶ 44    We agree with the State that, considering the discretion vested in the trial court, the factors presented in aggravation and mitigation, and that the sentence imposed falls well within the statutory guidelines, we do not find the sentence excessive. The State notes that, where mitigation evidence is before a court, it is presumed that the court considered that evidence, absent evidence to the contrary. *People v. Canet*, 218 Ill. App. 3d 855, 864 (1991).

In handing down the sentence, the trial court stated that it reviewed the evidence before it, including defendant's presentence investigation report, which contained the information defendant uses for support.

¶ 45    It is important to note that defendant's most recent conviction resulted in a sentence of four years' probation; however, that turned into a three-year prison term when defendant violated the terms of his probation. While the jump from that to a 14-year sentence is large, based on the information before the trial court, it is not *per se* excessive. As the trial court noted, that sentence resulted from defendant's election to be treated as a drug addict. Furthermore, unlike *Center*, defendant had five prior felony convictions and served terms in prison. The prior convictions were not merely for robbery of a bicycle and a Class 2 burglary. Defendant is an elementary school dropout with a history of drug issues and five prior convictions. Based on the record, the trial court did not abuse its discretion in imposing a sentence well within the statutory guidelines.

¶ 46                    D. Defendant's Term of Mandatory Supervised Release

¶ 47    Finally, defendant argues that the three-year MSR term imposed by the trial court was in error. Defendant argues that, while his record allowed the trial court to sentence him as a Class X offender, he contends that he committed a Class 2 offense that requires only a two-year term of MSR. Defendant contends that the three-year term imposed is void. Defendant contends that our supreme court's reasoning in *People v. Pullen*, 192 Ill. 2d 36 (2000), requires correction of the mittimus to reflect the proper MSR term of two years. We disagree with defendant's application of *Pullen* and agree with the State that defendant was properly sentenced.

¶ 48    In *Pullen*, because of his prior convictions, the defendant was sentenced as a Class X offender following his negotiated plea of guilty to five counts of burglary. Defendant's sentence resulted in an aggregate term of 30 years' imprisonment, two years' greater than the sum of maximum permissible extended-term sentences for two Class 2 offenses. *Id.* at 42-43. There was no dispute that the defendant was to be sentenced as a Class X offender, but the issue was whether the maximum was the sum of the maximum permissible extended-term sentences for Class X or Class 2 offenses. The *Pullen* court concluded that the offense was explicitly defined as a Class 2 felony and the character and classification of those offenses remained, regardless of whether the defendant was subject to the sentence enhancement or not. Therefore, since the sentence imposed exceeded the maximum aggregate term for Class 2 felonies, the sentence was void. *Id.* at 46.

¶ 49    Unlike in *Pullen*, this case does not involve the character and classification of the convictions. This case is in line with the decisions of this court on this issue. See *People v. Anderson*, 272 Ill. App. 3d 537 (1995); *People v. Smart*, 311 Ill. App. 3d 415 (2000); *People v. Watkins*, 387 Ill. App. 3d 764 (2009); *People v. Lee*, 397 Ill. App. 3d 1067 (2010). Each of these cases found that by the plain language of the statute, the MSR term is part of the sentence. In fact, the *Lee* court specifically rejected defendant's argument here that *Pullen* mandates a change in his MSR term. *Lee*, 397 Ill. App. 3d at 1072-73. Therefore, when subject to the enhancement, the MSR term for Class X offenses attaches to the sentence

imposed.

¶ 50                                   III. CONCLUSION

¶ 51         For the foregoing reasons, we affirm defendant's convictions and sentence.

¶ 52         Affirmed.