2020 IL App (2d) 180513-U
No. 2-18-0513
Order filed December 15, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 16-CF-844 |
| | ) | |
| KEVIN EARL ALLEN, | ) | Honorable |
| | ) | Rosemary Collins, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Jorgensen and Brennen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's sentence of four years' imprisonment for domestic violence, which was one year above the minimum for a Class 2 felony, was not an abuse of discretion given the severity of the offense, defendant's prior history of domestic violence, and his poor compliance with bond conditions; the record reflects that the trial court considered all relevant mitigating factors such as the financial impact of incarceration on defendant's dependents.

¶ 2    Defendant, Kevin Earl Allen, appeals from his sentence of four years' imprisonment imposed for his conviction of one count of domestic battery (insulting or provoking contact) charged as a Class 2 felony (720 ILCS 5/12-3.2(a)(2) (2016)).  Defendant asserts that this sentence constituted an abuse of discretion in that the court (1) failed to give appropriate weight to his

rehabilitative potential as shown by his history of consistent employment, (2) failed to consider the hardship to defendant's eight children, (3) failed to properly weigh that the offense caused little or no physical harm, and (4) failed to expressly indicate that it had considered all statutory factors in mitigation. We conclude that no abuse of discretion occurred, and we thus affirm defendant's sentence.

¶ 3                                    I. BACKGROUND

¶ 4      A grand jury indicted defendant on five counts arising out of a March 29, 2016, disturbance. He was charged with (1) two counts of aggravated battery of a peace officer (720 ILCS 5/12-3.05(d)(4) (West 2016)), (2) one count of domestic battery (insulting or provoking contact to N.B.) charged as a Class 2 felony because of defendant's prior convictions for domestic battery (720 ILCS 5/12-3.2(a)(2) (West 2016)), (3) one count of the unlawful restraint (N.B.) (720 ILCS 5/10-3(a) (West 2016)), and (4) one count of resisting a peace officer, thereby causing injury to the officer (720 ILCS 5/31-1(a-7) (West 2016)).

¶ 5      Defendant agreed to plead guilty to the domestic battery count in exchange for the State's agreement to dismiss the remaining counts. According to the factual basis presented by the State, the police arrived at defendant's Rockford house while defendant was struggling with N.B. in the front yard. Defendant grabbed N.B. around the waist as she tried to run towards the street, but she broke free, ran to a van parked on the street, and got into the driver's seat. Defendant chased her, took her arm in a two-handed grip, and, using his full weight, attempted to pull her out of the van. When police officers intervened, defendant tried to flee into his house. The State also showed that defendant had at least four prior convictions of domestic battery.

¶ 6      According to the presentence investigation (PSI), two of defendant's four prior domestic battery convictions occurred in 2002, one occurred in 2008, and the last one occurred in 2014.

Defendant had a high school diploma and had taken college-level courses. He had eight children—seven of them minors—with four women. At the time of his arrest, he had been continuously employed by Chrysler since 1994 and had several vocational certifications. He paid court-ordered child support of about $2000 a month to two of his children's mothers.

¶ 7     Defendant told the presentencing investigator "that he ha[d] had difficulty coping with stressful situations in the past, particularly involving confrontations with other people; he identified that his tendency to overact to situations in a defensive manner has contributed to his criminal behavior." Defendant had received private counseling to help him develop anger management skills.

¶ 8     Defendant had multiple vehicle and traffic violations, including driving under the influence and driving without insurance. He was convicted of felony misuse of a credit card in 1995, possession of cannabis in 1997, misdemeanor resisting a peace officer in 1999, aggravated battery in 2002, and misdemeanor disorderly conduct in 2008.

¶ 9     Defendant denied regular alcohol use but admitted that he used it while on bond. He admitted using marijuana to relieve stress while on bond. Defendant's mandated urine tests while on bond confirmed alcohol and cannabis use, in violation of his bond conditions.

¶ 10     Defendant called one witness, T.W., to testify in mitigation. T.W. had multiple sclerosis. She had two daughters with defendant and was dependent on his child-support payments to stay in her house. Defendant's medical insurance provided coverage for their daughters, and T.W. would not be able to pay for one daughter's braces without his help. T.W. indicated that defendant's long hours at work had prevented him from spending much time with their daughters. She conceded that, without defendant's child-support payments, she would probably become eligible for public aid. She further agreed that she had obtained a plenary order of protection

against defendant. Moreover, she was the victim of at least one of the domestic batteries that resulted in defendant's 2002 convictions.

¶ 11    Defendant made a statement in allocution expressing contrition for his acts.

¶ 12    The State asked the court to sentence defendant to four years' imprisonment based on the nature of the offense, his record of convictions for offenses other than domestic violence, and his history of poor compliance with the terms of bond or probation. It noted that, while defendant was on bond in this case, he "routinely tested positive for alcohol and marijuana" and "failed to go to appointments." Moreover, he had failed to complete Partner Abuse Intervention Programming (PAIP) in this case and two prior cases. A report from the PAIP provider in this case stated that defendant had "portrayed himself as the victim, minimized abuse, blamed the victim in the case, and [had been] sarcastic and confrontational with facilitators."

¶ 13    The State took note of the financial burden that defendant's incarceration would place on those who depended on him for child support but asked the court to place that factor behind the safety of those around defendant, his criminal history, and the need to deter others.

¶ 14    Defense counsel argued that defendant's comments to the presentence investigator showed that, although defendant had not gained insight into his substance abuse problems, he had started to understand the circumstances that led him to act violently. Counsel asked the court to give significant weight to the hardship that defendant's incarceration would cause his dependents.

¶ 15    The State responded that public aid could limit the hardship that defendant's incarceration would cause T.W. and her children.

¶ 16    The court sentenced defendant to four years' imprisonment and four years of mandatory supervised release (MSR). It stated that it had considered all the evidence presented, including the PSI, and had weighed all pertinent statutory factors in mitigation and aggravation. The court noted

that defendant had had previous opportunities to receive drug and alcohol treatment. In the court's view, defendant's multiple failures to comply with the terms of his bond precluded a sentence of probation.

¶ 17    The court stated, "[W]ith [defendant,] his record was so bad and the cases are so serious *** that, of course, the Court had to look at how he was going to do while this case was pending to give me a clue or some insight into how his behavior would be at sentencing." The court noted that defendant's failures to report to pretrial services forced the court to increase his bond but that he nevertheless continued to miss required appointments. Moreover, while he was out on bond, defendant had two positive tests for marijuana use and one positive test for alcohol use. He was unsuccessfully discharged from PAIP "due to lack of participation and then again was unsuccessfully discharged from PAIP classes from a different provider for different reasons."

¶ 18    The court found, "[I]t's a significant hardship to *** the mother of his children that he is no longer gonna be available to pay child support." That hardship, the court concluded, "[was] on [defendant] because he chose to engage in behavior that was going to remove him from the community." Moreover, "while the Court granted him the opportunity to be out on bond while this case was pending so that he could show [the court] he would comply with bond, he chose to violate the rules and to violate the law again while he was out on bond." The court told defendant that "many innocent people [were] hurt *** by [his] behavior, and [his] two children and [T.W.] are innocents that are hurt by his behavior; *** and he's gonna have to live with that because he's the one who is responsible for the hardships that [T.W.] and [her] family have gone through." The court concluded:

> "This is a serious case. This is a Class 2 felony. You have a serious record. I
> believe that you are not likely to comply with the terms of a period of probation because

of your behavior while this case was pending and your behavior while on probation for your other cases. I believe that probation would deprecate the seriousness of this offense and fail to protect the public from your behavior. I believe that a term in the Department of Corrections is necessary to deter others from committing similar offenses and, also, to protect the community *** from you. So, therefore, the Court is, in fact, going to sentence you to 4 years in the Department of Corrections."

¶ 19 Defendant, by the retained counsel who represented him throughout the proceeding, filed a motion to reconsider sentence. Defendant argued that the trial court failed to consider all statutory factors in mitigation and that his sentence was (1) inconsistent with the objective of restoring the offender to useful citizenship; (2) "not in keeping with the Defendant's *** history or criminality, mental history, family situation, economic status, education, occupational or personal habits"; and (3) "not in keeping with alternatives available to the Court to assist the Defendant in his rehabilitation." Later, defendant stated that he wanted new counsel and also wished to revive a previously withdrawn *pro se* motion to withdraw his plea. The trial court appointed counsel, who filed a motion to withdraw the plea or, in the alternative, to reduce the sentence. The trial court denied that motion. The court entered no separate ruling on retained counsel's motion to reconsider sentence. Defendant filed a timely appeal from the denial of the motion filed by appointed counsel.

¶ 20                                    II. ANALYSIS

¶ 21 On the issue of jurisdiction, defendant contends that, by asking for reduction of his sentence as alternative relief, appointed counsel's motion to withdraw the plea effectively incorporated the prior motion to reconsider sentence filed by retained counsel. Thus, according to defendant, when the trial court denied the motion filed by appointed counsel, it effectively denied the motion filed

by retained counsel. We believe the better analysis is that by filing a new motion to reconsider sentence, the newly appointed counsel abandoned the motion previously filed by retained counsel.

" It is *** axiomatic that amended pleadings supersede prior pleadings. See *People v. Cro*ss, 144 Ill.App.3d 409, 412 (1986) ('[A]s a general rule, an amendment which is complete in itself and which makes no reference to the prior pleading supersedes it, and the original pleading ceases to be a part of the record, being in effect abandoned or withdrawn.'). Defense counsel apparently concluded that a new motion is necessary (citation and internal quotation marks omitted) and clearly took advantage of the opportunity to file a new motion, to both withdraw the guilty plea and reconsider the sentence. Thus, defendant's prior motions to withdraw the plea and reconsider the sentence were superseded by her combined motion after remand." *People v. Bernard*, 2014 IL App (2d) 130924, ¶ 10, as modified on denial of reh'g (Feb. 10, 2014).

¶ 22 In this case the motion to withdraw the plea explicitly asked for reduction of the sentence as alternative relief, and the court explicitly denied that motion as a whole. Thus, although the court did not make explicit that it had decided retained counsel's motion, it did not have to because the filing of the new pleading superseded and abandoned the old pleading. We conclude that the court did not leave retained counsel's motion pending because it was abandoned by newly appointed counsel. Therefore, we have jurisdiction over this appeal.

¶ 23 On the merits of the appeal, defendant asserts that the court abused its discretion by imposing an excessive sentence. He contends that the sentence was "disproportionate to the degree of harm caused and did not adequately consider his 23-year history of stable employment with a single employer." He argues that the court's "complete lack of any discussion or reference to [his] employment [history] in its sentencing decision" rebuts the presumption that it considered that

history when it imposed sentence. He further contends that the court "failed to take into account *** the mitigating nature of [defendant's] *** family obligations." Finally, he argues that his employment history and family obligations were so significant that the court could not have arrived at a four-year sentence if the court considered those factors. He therefore asks us to reduce his sentence by one year to the Class 2 minimum of three years' imprisonment.

¶ 24 "A reviewing court may not alter a defendant's sentence absent an abuse of discretion by the trial court." *People v. Alexander*, 239 Ill. 2d 205, 212 (2010). In general, we may not reduce a sentence that is within the statutory range "unless it is greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense." *People v. Horta*, 2016 IL App (2d) 140714, ¶ 40. And we must not reweigh the factors in aggravation and mitigation. See, *e.g.*, *Alexander*, 239 Ill. 2d at 213 (a reviewing court must not substitute its judgment for that of the trial court merely because it would have given different weight to the sentencing factors). The seriousness of the offense is typically the most important sentencing factor. *People v. Watt*, 2013 IL App (2d) 120183, ¶ 50. Despite the deference we give to the trial court in sentencing, a sentence can constitute an abuse of discretion if the trial court ignored relevant mitigating factors or considered improper factors in aggravation. *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). When we review a sentence, we must presume that the trial court considered all the factors in mitigation; a defendant can overcome that presumption only by showing that the record demonstrates that the court failed to consider mitigating factors. *E.g.*, *People v. Towns*, 2020 IL App (1st) 171145, ¶ 48.

¶ 25 Defendant does not dispute that his sentence fell within the sentencing options for a Class 2 felony, which include, *inter alia*, probation or a prison term of three to seven years. See 730 ILCS 5/5-4.5-35(a), (d) (West 2016) (listing sentencing options). Defendant does not argue that

the court should have imposed a sentence of probation. He argues, rather, that the court abused its discretion by sentencing him to one year above the three-year minimum sentence.

¶ 26    We conclude that defendant's sentence is consistent with the nature of the offense. We also conclude that the record positively reflects that the trial court gave appropriate weigh to the likely hardship to defendant's dependents and that defendant has not overcome the presumption that the court also considered defendant's employment history. In view of all pertinent factors, the trial court did not abuse its discretion in fashioning defendant's sentence.

¶ 27    Defendant, focusing on the lack of physical injury to N.B., contends that the offense here was not serious enough to merit a four-year sentence. He cites *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990) (citing *People v. Saldivar*, 113 Ill. 2d 256 (1986)), for the proposition that, "while the statutory classification of a crime determines the range of permissible sentences, the severity of the sentence within that range depends largely upon the degree of harm caused." Defendant suggests that "harm" in a case such as this is essentially a matter of physical injury so that the absence of physical injury to N.B. should have weighed heavily in favor of the minimum sentence.

¶ 28    We conclude that the *threat* of harm associated with the offense here was enough to make the offense a serious one. We note that section 5-5-3.2 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2 (West 2018)) lists 32 factors that a court may properly consider in aggravation. Physical harm is only one of those factors. Moreover, section 5-5-3.2(a)(1) of the Code provides that the court may take into account that the "defendant's conduct caused *or threatened* serious harm." (Emphasis added.) 730 ILCS 5/5-5-3.2(a)(2) (West 2018). The effect of defendant's conduct here was to hinder N.B. in her attempt to escape from him by vehicle. Such conduct threatens to cause a serious escalation of violence. A person like N.B., who has to use

physical force to escape an assailant, cannot necessarily be expected to calibrate her use of force to the precise minimum necessary to get away. Further, an attempt to pull someone from a vehicle creates a chance that the vehicle will become a weapon in the altercation—thus significantly raising the risk of injury. Finally, it took the intervention of police officers to end defendant's attack on N.B. Had the attack not been interrupted, N.B. might well have suffered physical injury. It was within the court's discretion to deem this offense serious based on the harm that it *threatened* to cause.

¶ 29    The current offense is not an isolated instance for defendant, who has multiple prior convictions for domestic battery. This history, combined with his failure to comply with bond conditions, most notably PAIP, reflects poorly on his potential for rehabilitation.

¶ 30    Defendant contends that the court gave insufficient weight to his employment history as a factor in mitigation. We conclude that, in the circumstances here, the court *did not* have to give any particular consideration to his consistent employment. A history of consistent employment is not a statutory factor in mitigation. See 730 ILCS 5/5-5-3.1 (West 2018). A court may consider such a history as, for instance, an indicator of a defendant's rehabilitative potential or likelihood to comply with the terms of probation. See 730 ILCS 5/5-5-3.1(a)(10) (West 2018). But defendant's employment history was not mitigating in these ways. Defendant had a poor history while on bond and probation. Further, defendant's criminal history showed no link between his ability to maintain regular employment and his ability to rehabilitate himself. He committed most of his crimes while he was employed with Chrysler. Evidently, defendant refrained from criminal behavior in the workplace, but with domestic partners he obviously lacked self-control.

¶ 31    Defendant also contends that the court failed to give any weight to the hardship his imprisonment will cause his dependents. See 730 ILCS 5/5-5-3.1(a)(11) (West 2018) (factor that

"[t]he imprisonment of the defendant would entail excessive hardship to his dependents"); 730 ILCS 5/5-5-3.1(b) (West 2018) (when the trial court has decided that a sentence of imprisonment is mandated, it "shall *** consider[]" all listed mitigating factors "as factors in mitigation of the term imposed"). We do not agree. The court *did* explicitly mention defendant's financial support of his children, stating that the harm to their finances "was on him" because he had acted in a way that made probation inappropriate. The court did not give the factor the weight that defendant would have liked, but the court provided its reasons. The court cited defendant's behavior during the pendency of the case, such as his positive tests for drugs and alcohol and his grudging participation in PAIP classes, which he ultimately failed to complete. The court evidently believed that, in view of defendant's poor prospects for complying with probation, the need to protect the public outweighed the potential hardship to defendant's dependents.

¶ 32    Defendant also argues that the court must have failed to give *any* weight to his rehabilitative potential, because the court did not comment on that potential. He recognizes that, absent evidence to the contrary, the court is presumed to have considered all mitigating factors (see *People v. Payne*, 294 Ill. App. 3d 254, 260 (1998)). Ultimately, defendant's proof that the trial court *did not* consider his rehabilitative potential is the sentence itself. Thus, defendant is merely arguing that that the sentence is "greatly at variance with the spirit and purpose of the law or manifestly disproportionate to the nature of the offense" (*Horta*, 2016 IL App (2d) 140714, ¶ 40). For the reasons already stated, we reject that argument.

¶ 33                                III. CONCLUSION

¶ 34    For the reasons stated, we uphold defendant's sentence and affirm the judgment of the circuit court of Winnebago County.

¶ 35    Affirmed.