NOTICE
Decision filed 05/26/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 200269-U

NO. 5-20-0269

IN THE

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Shelby County. |
| | ) | |
| v. | ) | No. 16-CF-139 |
| | ) | |
| BOBBY M. SMITH, | ) | Honorable |
| | ) | Martin W. Siemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE CATES delivered the judgment of the court.
Justices Wharton and Vaughan concurred in the judgment.

**ORDER**

¶ 1   *Held*:  The trial court did not abuse its discretion in sentencing the defendant to four years of imprisonment for a Class 3 felony conviction.

¶ 2   A jury found the defendant, Bobby M. Smith, guilty of unlawful possession with the intent to deliver 30 to 500 grams of a substance containing cannabis (720 ILCS 550/5(d) (West 2016)) and unlawful possession of cannabis of 100 to 500 grams of a substance containing cannabis (720 ILCS 550/4(d) (West 2016)). The defendant was sentenced to four years of imprisonment with one year of mandatory supervised release (MSR). On appeal, the defendant argues that his sentence was excessive where it was

1

disproportionate to the nature of the offense and the defendant's criminal history. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     On December 16, 2016, the Cowden Police Department conducted a search of the defendant's home. The police found a total of 418.1 grams of cannabis along with a digital scale, baggies, and a ledger book of sales. The 50-year-old defendant was arrested and charged with one count of unlawful possession of cannabis with the intent to deliver 30 to 500 grams (720 ILCS 550/5(d) (West 2016)). The defendant was subsequently charged with a second count of unlawful possession of 100 to 500 grams of a substance containing cannabis (720 ILCS 550/4(d) (West 2016)).

¶ 5     The defendant was held from December 16, 2016, to December 21, 2016, before he was released on bond. A condition of the bond required the defendant to refrain from drugs and alcohol consumption. Fifteen of the defendant's random drug screens tested positive for THC in violation of his bond requirement.

¶ 6     The defendant's jury trial began on March 19, 2018. Zachary Sarver, a part-time chief of police for the Cowden Police Department, testified to the events that led to the defendant's arrest. Several citizens and police officers had reported to Sarver that the defendant sold drugs out of his home. Based upon this information, Sarver began monitoring the defendant's residence in the beginning of 2016.

¶ 7     Sarver testified to an incident in April of 2016, when he first approached the defendant. Sarver had been issuing citations to residents for various village ordinance violations. When Sarver was within 30 to 40 feet of the defendant's house, he could smell

2

"the odor of burnt cannabis." Sarver knocked on the defendant's door to speak with the defendant about an unregistered parked car on his property. Sarver testified that he also confronted the defendant about the marijuana odor. Sarver asked to enter the defendant's property. The defendant declined access and accused Sarver of trespassing. Sarver handcuffed the defendant and placed the defendant in Sarver's police car for several minutes. The defendant was released after an unsuccessful attempt to obtain a search warrant.

¶ 8    Sarver continued to monitor the defendant's property for several months thereafter. During that time, Sarver witnessed "dozens of people" enter the defendant's house, remain inside for approximately five minutes, and leave. Sarver testified to stopping an individual for speeding after that person left the defendant's property on November 15, 2016. When Sarver made the traffic stop, he could smell cannabis in the car. Sarver indicated that the driver stated he had purchased cannabis from the defendant. As a result of this traffic stop, Sarver obtained a search warrant for the defendant's property.

¶ 9    On December 16, 2016, Sarver executed the search warrant for the defendant's home. The defendant, along with his girlfriend, Sadie Hannebohn,[1] and Sadie's adult son, George Cannon, were at home during the search. Sarver testified that the defendant agreed to cooperate and stated that if anything illegal was found inside of the house, it was his and did not belong to Sadie or Cannon.

---

[1]Sadie Hannebohn married the defendant on March 17, 2018. She referred to herself as Sadie Smith on the trial date. Sadie and the defendant then divorced between the trial date and the sentencing hearing.

3

¶ 10 During the search, the defendant handed Sarver a plastic grocery bag that contained several bags of cannabis, sandwich baggies, and a black logbook. The black logbook contained a ledger of sales which included names or initials of customers. The defendant additionally pointed out a digital scale that appeared to be a black CD case. During the search, the officers also found a "hitter pipe," rolling papers, and additional cannabis, in a decorative container.

¶ 11 The items that were found inside of the house were bagged, photographed, and placed in the evidence locker at the police station. Sarver weighed the cannabis and testified that the defendant had approximately 450 grams of cannabis in total. The bags of cannabis were taken to the Illinois State Police (ISP) crime lab on February 13, 2018, for testing. The scale and the "hitter pipe" were not sent to be tested by the ISP.

¶ 12 On December 16, 2016, the defendant was transported to the sheriff's department for processing. According to Sarver's testimony, the defendant gave a statement, explaining that he self-medicated with marijuana to relieve his back pain and sold marijuana to cover the cost of his personal supply. The defendant additionally claimed ownership of the drug paraphernalia obtained during the search. Sarver testified that the defendant admitted that he kept a logbook as a ledger for the sale of cannabis.

¶ 13 Julia Edwards, an employee of the ISP forensic crime lab, testified at trial. She explained the process of identifying the plant material evidence received from Sarver. The evidence arrived in three containers. Edwards weighed the contents of each container. The plant material weighed 418.1 grams total. Edwards testified that the plant material in the containers appeared to be from the same plant source. Edwards performed two tests on

4

each container. The first test was the Duquenois-Levine color test, that involved adding two chemicals to a small piece of plant material which caused a purple color to develop. The purple coloring was indicative of a positive test for cannabis. Edwards also performed a gas chromatography-mass spectrometry instrumental test which resulted in positive results for Delta-9-THC, which was a cannabinoid found in cannabis.

¶ 14    At the close of the State's case, it offered the three separate containers of cannabis, the "hitter pipe," sandwich baggies, digital scale, and black logbook into evidence. The court admitted all seven exhibits into evidence, over the defendant's objection to the admission of the "hitter pipe" that was not tested by the ISP.

¶ 15    The defense then moved for a directed verdict and argued that the ISP only tested a sample of the cannabis; therefore, the State did not meet its burden to prove the defendant had over 30 grams of cannabis. The trial court found that the testimony presented was sufficient and the jury could draw the reasonable inference that the entire amount of plant material was cannabis. The court denied the motion for a directed verdict.

¶ 16    The defense then presented its case and called Sadie to testify. Sadie testified to her interactions with Sarver. In April of 2016, Sadie stated that Sarver came to their house about an ordinance violation and claimed he smelled marijuana. Sarver was rough with the defendant and handcuffed him after the defendant refused to let Sarver search their house. While the defendant was handcuffed, Sarver then asked Sadie if she would let him search the property. She again refused to let Sarver search the property without a search warrant.

¶ 17    Sadie also testified to the search of their property on December 16, 2016. The police officers never questioned Sadie about the cannabis found at the property and whether it

belonged to her or Cannon, her adult son, even though they both lived with the defendant. Sadie did not believe that the officers spoke to Cannon about the cannabis. Only the defendant was questioned and arrested.

¶ 18    The defendant testified on his own behalf. The defendant explained that he ruptured two discs in his back while he was working at Grain Systems International. The accident caused nerve damage and the defendant self-medicated with marijuana because the prescribed opiates made him feel sick.

¶ 19    The defendant also testified to his belief that Sarver held a "grudge" against him. When Sarver had approached the defendant in April 2016, regarding an ordinance violation, Sarver had his hand on his gun in the holster. The defendant went outside and sat in a lawn chair while he spoke to Sarver about the allegations. Sarver was visibly upset after the defendant asked to speak to the sheriff and told Sarver that he was trespassing. The defendant claimed that Sarver had "yanked" the defendant from his chair, handcuffed him, and placed him in the back of the police car. The day after the incident the defendant contacted the sheriff's department and made a complaint about Sarver. The incident had aggravated the defendant's back.

¶ 20    The defendant then testified that during the search of his house on December 16, 2016, he took responsibility for anything that was found inside of his house. The defendant, however, testified that he was never asked, and he never admitted to selling cannabis. The defendant denied making a statement at the police station.

¶ 21    After the defendant testified, the State asked the court to take judicial notice of the defendant's prior criminal history. The defendant had been convicted on July 18, 2007, on

6

the charge of possession of cannabis, 30 to 500 grams. The defendant was also convicted on November 23, 2009, on the charge of driving while his license was revoked. The criminal history exhibits were admitted into evidence over the defendant's objection.

¶ 22    The jury found the defendant guilty of unlawful possession of cannabis with intent to deliver, more than 30 grams, but not more than 500 grams. The jury also found that the defendant was guilty of unlawful possession of more than 100 grams, but not more than 500 grams of cannabis.

¶ 23    The sentencing hearing was scheduled for February 4, 2020. The defendant requested a continuance at that time because of errors on the presentence investigation (PSI). The PSI indicated that time served was five days, but the defendant should have received credit for six days. A felony from 1998 was categorized as a Class 3 felony and the defendant believed it should have been a Class 4 felony. There was also a question of time served on a conviction from 2009 where the PSI did not indicate the classification of the offense. The matter was continued to provide the defendant time to prepare for the sentencing hearing after the PSI issues were resolved.

¶ 24    On August 11, 2020, the matter proceeded to sentencing. The court stated that the jury returned guilty verdicts on two counts. The defendant's unlawful possession conviction was a lesser-included offense of the unlawful possession with intent to deliver conviction. The court found it appropriate to only sentence the defendant on the unlawful possession of cannabis with intent to deliver conviction. The court also stated that the sentencing range for the Class 3 felony was three to five years. The State agreed and took the position that the defendant was not eligible for an extended term sentence.

¶ 25    The defendant testified at the sentencing hearing that a sentence to the Department of Corrections would be a hardship on his family because he helped take care of his grandchildren. The defendant stated that his family members would be available to assist him if he were to receive probation or needed any type of recovery or treatment.

¶ 26    The defendant further testified that at the time of his arrest he was living with Sadie and her son, Cannon. The defendant stated that a portion of the cannabis belonged to Cannon, including the hitter pipe. The defendant indicated that he took responsibility for Cannon's portion of the cannabis to protect Cannon's truck driving license to allow Cannon to provide for his family.

¶ 27    Since the time of his arrest in 2016, the defendant did not have any further issues with law enforcement. The defendant had obtained a medical marijuana card, which made any future marijuana use legal. The defendant believed that he had been punished enough during the last five years where his life was "put on hold" due to his actions and requested probation. The defendant stated that he would comply with the terms of probation.

¶ 28    Adam Smith, the defendant's son, as well as Lisa Robson, the defendant's girlfriend, also testified. They both indicated that they were willing to assist the defendant if he were sentenced to probation. Both were concerned about the defendant's grandchildren and the defendant's medical condition. They believed that the defendant's medical condition would deteriorate in prison.

¶ 29    After Robson testified, the defendant offered his medical marijuana card into evidence without objection from the State. The medical marijuana card was issued by the

Illinois Department of Public Health for the Opiate Alternative Program and effective July 14, 2020, through October 12, 2020.

¶ 30 The State recommended a sentence of four years, followed by a one-year period of mandatory supervised release, as well as a $100 fine and for all applicable drug assessments to apply. The State argued factors in aggravation pursuant to section 5-5-3.2 of the Unified Code of Corrections (Code) (730 ILCS 5/5-5-3.2 (West 2020)). According to the State, the defendant had a history of prior delinquency or criminal activity. The PSI returned seven prior felony convictions, including three felony convictions related to the delivery of cannabis. The State argued that a sentence of probation, where the defendant had seven prior felony convictions, would deprecate the seriousness of the offense and signal to others that a seventh felony conviction would receive probation. The defendant also had 15 positive drug screens in violation of the terms of his pretrial release. The State argued that the defendant would not follow the rules of the court, probation, or Illinois laws.

¶ 31 The State additionally argued that a sentence of imprisonment was necessary to deter others from committing the same crime. There was a misconception that "anything goes" after the legalization of marijuana in Illinois and certain legal limits remain in place for cannabis use. The State acknowledged that the medical marijuana card would secure legal access to cannabis. The defendant's medical marijuana card was not a deterrent, however, to the delivery of cannabis. The State argued that the court must punish individuals in the business of addicting others.

¶ 32 Counsel for the defendant argued there were several applicable factors in mitigation under sections 5-5-3.1(a)(4), (5), (8), (9), (10), and (12) of the Code (730 ILCS 5/5-5-

9

3.1(a)(4), (5), (8), (9), (10), (12) (West 2020)). The defendant argued that the fourth factor in mitigation applied where there were substantial grounds tending to excuse or justify the defendant's criminal conduct. The defendant claimed he used marijuana to treat his medical condition and he had taken responsibility for the cannabis and items that belonged to Cannon. The defendant also argued that the fifth factor in mitigation applied where the defendant's criminal conduct was induced or facilitated by someone other than the defendant. The defendant claimed that because he took responsibility for the illegal items in his residence for his ex-wife's son, Cannon, the court should consider this factor in mitigation.

¶ 33 The defendant argued that the trial court should apply the eighth factor in mitigation, where criminal conduct was the result of circumstances unlikely to recur, and the tenth factor, where the defendant is particularly likely to comply with the terms of a period of probation. The defendant reasoned that both the eighth and tenth factor apply because he obtained a medical marijuana card. The defendant's criminal history involved cannabis-related crimes as the defendant had self-medicated for the majority of his life. The medical marijuana card allowed the defendant to legally possess marijuana to use for his medical conditions. Because the defendant can now legally purchase and use marijuana, criminal conduct was unlikely to occur, and he was likely to comply with the terms of his probation because he was allowed to legally use marijuana.

¶ 34 The defendant also argued that the trial court should consider the ninth factor in mitigation, where the defendant's character and attitude indicated that he was unlikely to commit another crime. The defendant believed that he had demonstrated, by not

committing a crime since December 16, 2016, that his character and attitude showed he was unlikely to commit another crime.

¶ 35 The defendant additionally argued that the trial court should consider the twelfth factor, where imprisonment would endanger his medical condition. The defendant was afraid that his ability to walk would deteriorate if he was not allowed to manage his pain with marijuana while in prison. The defendant asserted that he had also been diagnosed with chronic obstructive pulmonary disease (COPD), which made him a high-risk individual for having complications if he were to contract COVID-19 in prison. The defendant argued for a sentence of probation with a standard fine.

¶ 36 The defendant then made an additional statement in allocution. He stated that throughout his life he used cannabis to avoid using more potent drugs. The defendant apologized to the court and stated that he did not deliver cannabis to anyone. The defendant further stated that he did not intend on breaking the law.

¶ 37 The court asked for clarification on a few of the factors presented in mitigation and aggravation. The court questioned the State about the defendant's position regarding factor twelve, that imprisonment would endanger the defendant's medical condition. The State argued that the Department of Corrections had medical services available. Alternative non-opioid medications were available to the defendant to treat his back pain. Prisoners were being transported again after the start of the COVID-19 pandemic, and the State argued that the Department of Corrections had reached a level of safety that was predictable.

¶ 38 The court questioned the defendant on whether a sentence of probation would deprecate the seriousness of the crime. The defendant's counsel responded that the

11

defendant had denied most of the charges on his record and that he never had the intention of delivering cannabis. The defendant argued that he had more than "user quantity" but it was for the purpose of his personal use. The defendant also responded to the State's argument regarding non-opioid alternative medications to treat back pain. The defendant had tried alternative medications and cannabis worked best for him. Cannabis would not be available to treat the defendant's back pain in prison.

¶ 39    The trial court stated that it considered the information presented during the sentencing hearing, as well as the trial evidence. The trial court considered the PSI, the defendant's history, character, and attitude, as well as arguments presented, recommendations, and the defendant's statement of allocution. The trial court additionally stated that it had considered the factors in aggravation and in mitigation.

¶ 40    The trial court then discussed the factors in mitigation raised by the defendant. The trial court did not find that there were substantial grounds tending to excuse or justify the defendant's criminal conduct. The court did not give much weight to the factor where the defendant's conduct was excused or justified, or the factor where the criminal conduct was induced or facilitated by someone other than the defendant. The court found that the record did not support the defendant's argument that he took responsibility for the cannabis found in his home to protect his stepson. The defendant's claim that he bought cannabis in bulk for his own use was also not supported by the record.

¶ 41    The court considered the defendant's argument regarding the factor where the defendant's conduct was the result of circumstances unlikely to recur again. The court considered the medical marijuana card admitted into evidence and the defendant's

explanation that he used marijuana for medical purposes. The trial court concluded that defendant's argument disregarded the defendant's prior conviction and disregarded the evidence that supported the intent to deliver. The court was not persuaded by the defendant's argument that the defendant's conduct was likely to occur again. However, the court found that a significant amount of time had passed, and the defendant had no additional arrests. The court weighed this factor in the defendant's favor because it considered that the defendant's conduct was unlikely to occur again based on the amount of time that had passed without additional arrests.

¶ 42    The court stated that the tenth factor in mitigation, that the defendant is particularly likely to comply with the terms of a period of probation, "cuts both ways." The court stated that there were long periods between convictions in the defendant's criminal history. The court considered that the defendant may be on a better path now, but gaps between convictions were not unusual for the defendant. There were also indications in the record that the defendant had not complied with probation. The court recognized that a medical marijuana card may alleviate potential probation violations; however, the court could not find that the defendant was likely to comply with the terms of the probation.

¶ 43    When the court considered the factor as to whether imprisonment would endanger the defendant's medical condition, the court found that neither the State nor the defendant provided competent testimony. Although the defendant provided his medical information, the court did not have competent evidence on whether treatment options were available or what impact imprisonment might have on the defendant's condition.

13

¶ 44    The trial court additionally considered the factor which addressed the character and attitude of the defendant. The court stated that the defendant, throughout the proceedings, had "always been very polite, very respectful." The court found that this factor should be given weight in mitigation.

¶ 45    The court then considered the factors in aggravation. 730 ILCS 5/5-5-3.2 (West 2020). The court indicated that the State's argument that a sentence was necessary to deter other from committing the same crime was well taken. The court also considered whether the defendant's conduct caused or threatened serious harm. Although the court did not find anything specific to show harm, there was an indication of threatened harm that weighed in favor of aggravation.

¶ 46    The court found that probation would deprecate the seriousness of the crime committed. The court considered the defendant's criminal history and concluded that the State's recommendation was appropriate. The defendant was sentenced to four years in the Illinois Department of Corrections, with one year of mandatory supervised release. The defendant received credit for six days served and a $100 fine with mandatory assessments that amounted to $860.

¶ 47    On August 21, 2020, the defendant filed a motion to reconsider the sentence. The defendant argued that the sentence imposed was excessive based on the evidence in aggravation and mitigation. The defendant asserted that the court did not give adequate consideration to the defendant's potential for rehabilitation. The defendant argued he used marijuana as a pain killer, he feared inadequate medical treatment in prison, and he was

concerned about contracting COVID-19 because he had a high risk of having complications due to his COPD.

¶ 48    On September 1, 2020, the trial court heard the defendant's motion to reconsider the sentence. The trial court stated that this was not a medical marijuana case. Evidence supported the conviction on the offense of unlawful possession of cannabis with intent to deliver. The trial court considered again the factors in aggravation and mitigation. The court denied the defendant's motion to reconsider the sentence and the original sentence remained in place. This appeal follows.

¶ 49                                    II. ANALYSIS

¶ 50    On appeal, the defendant raises issue with the imposed sentence. The defendant argues that the four-year prison sentence imposed by the trial court for intent to deliver 30 to 500 grams of cannabis was excessive where the sentence was disproportionate to the nature of the offense and the defendant's criminal history.

¶ 51    "It is well settled that a trial judge's sentencing decisions are entitled to great deference and will not be altered on appeal absent an abuse of discretion." *People v. Jackson*, 375 Ill. App. 3d 796, 800 (2007). The trial court must consider the defendant's "credibility, demeanor, general moral character, mentality, social environment, habits, and age" and impose a sentence based on the particular circumstances of each case. *People v. Pina*, 2019 IL App (4th) 170614, ¶ 19. The court must also carefully consider the statutory factors in mitigation and aggravation. *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). The court, however, is not required to recite and assign a value to each factor considered.

15

*Pina*, 2019 IL App (4th) 170614, ¶ 19. There is a presumption that a trial court considers all mitigating evidence presented. *People v. Abrams*, 2015 IL App (1st) 133746, ¶ 33.

¶ 52    The jury returned guilty verdicts on the intent to deliver 30 to 500 grams of cannabis, a Class 3 felony (720 ILCS 550/5(d) (West 2016)), as well as the lesser-included offense of unlawful possession of 100 to 500 grams of a substance containing cannabis, a Class 4 felony (720 ILCS 550/4(d) (West 2016)). Multiple convictions are improper if an offense is a lesser-included offense. *People v. Miller*, 238 Ill. 2d 161, 165 (2010). The defendant was sentenced for the Class 3 felony conviction. A Class 3 felony is subject to two to five years' imprisonment. 730 ILCS 5/5-4.5-40(a) (West 2020). The defendant received a four-year sentence. Because the defendant's sentence is within the permissible sentencing range, the sentence is presumed to be proper, and this court will not disturb the sentence absent an abuse of discretion. *Pina*, 2019 IL App (4th) 170614, ¶ 20.

¶ 53    An abuse of discretion occurs when the court's sentence "is greatly at variance with the purpose and spirit of the law" even if the sentence is within the statutory limitations. *Center*, 198 Ill. App. 3d at 1032. The defendant argues that because of the recent developments surrounding cannabis laws, the sale of cannabis is not a serious offense deserving of a four-year prison sentence. The defendant further argues that the trial court's characterization of the offense does not conform with the community's values.

¶ 54    As of January 1, 2020, Illinois residents 21 years old and older can legally possess certain permissible limits of cannabis and a license to sell cannabis may be obtained under the Cannabis Regulation and Tax Act (410 ILCS 705/1-1 *et seq.* (West 2020)). However, the duty to enforce the provisions of the Cannabis Control Act remains in effect. 720 ILCS

16

550/17 (West 2020). Under the Cannabis Control Act, the intent to deliver 30 to 500 grams of cannabis is a Class 3 felony, where the Cannabis Regulation and Tax Act does not apply. 720 ILCS 550/5(d) (West 2020). The defendant does not dispute his conviction.

¶ 55    The record shows that the trial court considered the particular circumstances of the defendant's case during the sentencing hearing and considered the defendant's criminal history. The PSI revealed that the defendant had multiple felony convictions, including three convictions for the delivery of cannabis that dated back to 1987. The defendant additionally violated his pretrial bond conditions 15 times by testing positive for cannabis before he obtained a medical marijuana card.

¶ 56    During the sentencing hearing, the defendant argued numerous factors in mitigation and the State argued numerous factors in aggravation. The trial court asked for clarification on both the State and the defendant's arguments. The trial court then discussed in detail the aggravating and mitigating factors raised by the parties. We presume that the trial court considered all of the mitigating information, without evidence to the contrary. See *Abrams*, 2015 IL App (1st) 133746, ¶ 33. The trial court did not abuse its discretion where the defendant was sentenced within the statutory range for a Class 3 felony.

¶ 57                                III. CONCLUSION

¶ 58    For the foregoing reasons, the judgment of the circuit court of Shelby County is hereby affirmed.

¶ 59    Affirmed.

17