NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241139-U

NO. 4-24-1139

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
May 19, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| FRANCISCO GOMEZ-ALDANA, | ) | No. 23CF301 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Jennifer H. Bauknecht, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Vancil and Cavanagh concurred in the judgment.

**ORDER**

¶ 1     *Held*: The appellate court affirmed, as the trial court did not abuse its discretion in sentencing defendant to three years in prison for indecent solicitation of a child and traveling to meet a child.

¶ 2     Defendant, Francisco Gomez-Aldana, pleaded guilty to indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2022)) and traveling to meet a child (720 ILCS 5/11-26(a) (West 2022)). The trial court sentenced him to three years in prison. On appeal, he contends that this sentence was excessive. For the following reasons, we affirm.

¶ 3                                I. BACKGROUND

¶ 4     On August 7, 2023, the State charged defendant with indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2022)) and traveling to meet a child (720 ILCS 5/11-26(a) (West 2022)). The State alleged that (1) between August 2 and August 4, 2023, defendant communicated electronically with a person whom he believed to be a child in order to solicit the child to perform

an act of sexual conduct and (2) on August 4, 2023, defendant traveled for the purpose of engaging in a sexual offense with a person he believed to be a child after using electronic communication to seduce, solicit, lure, or entice that child.

¶ 5 On March 19, 2024, defendant pleaded guilty to both charges. The trial court advised him of the sentencing range and admonished him about the rights he would be waiving if he pleaded guilty. Defendant confirmed that he understood. The State then provided a factual basis for the plea, explaining that if the case went to trial, the State would present testimony from Drew Chase from the Livingston County Sheriff's Office. Chase would testify that he operated an undercover Facebook account portraying a 14-year-old girl and that defendant messaged this account. Chase immediately identified himself to defendant as a 14-year-old girl. Defendant then engaged in a sexually charged conversation with Chase, including descriptions of the sexual acts that he wanted to perform with the 14-year-old girl. When defendant arranged to meet with the girl, he was arrested. The court accepted this factual basis and defendant's guilty plea.

¶ 6 The trial court held a sentencing hearing on June 11, 2024. One of the items the court considered at sentencing was a sex offender evaluation conducted on February 10, 2024. The psychologist conducting the evaluation, Dr. Sergio V. Grajeda, reported the following. Defendant "exhibited a pervasive pattern of denial and minimization of deviant and problematic behaviors," and the evaluation process was consequently abbreviated. Defendant reported "adverse life events during his childhood," including being abused by his father and his father's suicide when defendant was 14 years old. Defendant completed sixth grade in Mexico. He was employed by a tree service company, where he had worked for nine years. He reported a positive relationship with his wife, who had five children from a previous marriage. He stated that when one of his stepdaughters found out about the criminal charges against him, she expressed her belief that he was a child

abuser, and she did not want her own children near him. He denied having any friendships.

¶ 7        Moreover, according to the sex offender evaluation, defendant explained that, after discovering that the "girl" he texted was a minor,

> "I continued to text her because she told me that if I did not meet her, she was going to come looking for me. I drove to meet her at the place she told me, but I stopped at a pizzeria. I wanted to talk to her. In the beginning yes, I wanted to have sex with her, but I changed my mind when she posted something about wanting to have pleasure. I had condoms in the car that the police found. They also found brass knuckles and duct tape… I found those items in a car I had purchased and was going to clean it. I put them in the van along with a knife and the radios I used at work, but I had no plans to do anything to her."

He expressed a sense of victimization, and Dr. Grajeda noted that defendant "demonstrated limited empathy and concern for others as a result of the offense."

¶ 8        Dr. Grajeda also reported that there were several factors that could potentially impact defendant's risk to sexually reoffend, including "intimacy deficits and poor interpersonal relationships," "weak and superficial connections to others," loneliness, and "deficits in problem-solving, negative emotionality and sex as coping." A risk assessment instrument placed defendant at an average risk of reoffending.

¶ 9        At the sentencing hearing, the trial court also considered a presentence investigation report (PSI) filed on June 6, 2024, which described the basis for the charges against defendant. In addition to the factual basis above, the PSI stated that when the police stopped defendant's van, defendant "was extremely nervous and shaking, sweating so profusely his shirt was wet." Defendant acknowledged that he was meeting a 14-year-old girl, who told him to bring condoms

and alcohol. A search of defendant's vehicle revealed eight condoms, a six-pack of Mike's Hard Lemonade, a set of brass knuckles, two two-way radios, and some duct tape.

¶ 10       Defendant was interviewed by the probation department on June 6, 2024, and the trial court considered the resulting supplemental PSI filed on June 10, 2024. The supplemental PSI indicated the following. Defendant and his wife were Jehovah's Witnesses. Defendant financially supported his mother, who still resided in Mexico. Defendant was abused by his father during his childhood. Defendant resided with his wife, two of her children, and three of her nieces and nephews. He reported that his wife's children did not like him. Defendant expressed that he had been struggling mentally since his arrest and "has thought about taking his life." Defendant "reported having learned from his mistake, and wants to atone for it."

¶ 11       Defendant also submitted eight character letters that the trial court considered at sentencing. Many of these letters referred to defendant's innocence. A letter written by his stepdaughter expressed her belief that "he deserves a second chance to continue to be by his family's side and to prove that he is innocent and this is all a big misunderstanding." His stepson wrote that he "strongly believe[s] [defendant] is not the men [*sic*] that you are accusing of those terrible crimes." Another letter stated that the author "believe[s] [defendant] deserves a second chance to prove that he is not guilty of the horrible crimes he's being accused of." Defendant also wrote his own letter, which was translated from Spanish. In it, defendant wrote:

"I would like to express that I am emotionally and mentally perturbed by finding myself in this situation. I would never put the well being of another person at stake.

This situation has changed me and I am deeply remorseful at the fact that my actions have placed me in this situation. I have learnt a great deal from it and I

- 4 -

will never put myself in a remotely similar situation ever again.

What I am being accused of is extremely repugnant and abhorrent."

¶ 12 The State recommended a three-year sentence of imprisonment and expressed that probation would deprecate the seriousness of the offense. The State emphasized that deterrence and threat of harm were aggravating factors. The State discussed that defendant was aware the minor was 14 years old, lied about his own age in his communications with the minor—telling her that he was 28 years old, when he was actually 37 years old—and brought condoms, alcohol, and duct tape to meet with her. The State also noted that defendant did not understand the seriousness of the offense, as the character letters showed that defendant was "not at all forthcoming with the persons writing them about the facts and circumstances," where each letter expressed "that he's not guilty, that he needs to prove his innocence."

¶ 13 In turn, defense counsel stated that defendant's case "has quite a bit of mitigation." Counsel emphasized that defendant did not have a criminal record and the PSI suggested a low risk of re-offending. Counsel requested that defendant be placed on a term of probation.

¶ 14 Defendant provided a statement in allocution. He stated that he "did not bring the alcohol because [he] wanted to but because it was requested by the supposed minor that was not a minor." He added that he did not plan to use the duct tape to hurt someone but had it "if a wire in a vehicle breaks."

¶ 15 The trial court stated that there "are a number of aggravating factors in this case," including defendant's failure to take responsibility, deterrence, and the threat of harm. The court considered a number of factors, including the seriousness of the offenses charged, the PSI, the factors in aggravation and mitigation, the sex offender evaluation, defendant's potential for rehabilitation, and defendant's statement in allocution. The court stated, "It's not practical for me

to comment on every single thing, but I will point out what stands out in my mind as significant with regards to this particular case." The court then conducted a thorough analysis of the relevant facts. The court emphasized (1) the seriousness of the offense, (2) that minors are a protected class, (3) the presence of alcohol, duct tape, and brass knuckles in defendant's vehicle, (4) defendant's failure to take responsibility as expressed in the sex offender evaluation, and (5) that defendant provided a different explanation for the presence of the duct tape in the sex offender evaluation than he did in his statement in allocution. The court noted that defendant continued to refuse to take responsibility in saying that he only brought the alcohol because the minor requested it. The court also agreed with the State that "the information contained in the letters that [defendant] provided suggests that the letters are written to say that [defendant is] not guilty of these offenses." The court noted that defendant stated in the PSI that his stepchildren did not like him, which was at odds with the letters written by his stepchildren, and "appears to be the exact opposite of what [defendant] told probation." The court expressed that all these factors led it to distrust defendant.

¶ 16        The trial court believed that a term of probation would deprecate the seriousness of the offense and "be inconsistent with the ends of justice." The court ultimately sentenced defendant to three years in prison on each count, to run concurrently, and six months of mandatory supervised release (MSR). The court ordered defendant to register as a sex offender upon his release from prison.

¶ 17        On June 25, 2024, defendant filed a motion for reconsideration of his sentence. He argued that the sentence imposed was unduly harsh and punitive in light of the mitigating factors present. The trial court held a hearing on the motion on August 27, 2024. The State emphasized that the court gave proper weight to the mitigating factors raised by defendant when sentencing him, so the motion should be denied. The court denied the motion, stating that it accurately

explained the reasons for the sentence, which was well within the sentencing range, and that it had not "heard anything new that the Court may have inadvertently failed to take into consideration."

¶ 18     This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20     On appeal, defendant reasserts his argument that his sentence is excessive because the trial court failed to consider the applicable mitigating factors. He contends that the sentence is at odds with the facts that he (1) had no criminal history, (2) was employed, (3) was an active member of his church, cared for his wife's children, and sent money to his mother in Mexico, (4) experienced instability and hardships during childhood, (5) did not harm any direct victims, and (6) showed that he appreciated the seriousness of the offense and expressed remorse.

¶ 21     "[A] reviewing court presumes that a sentence imposed within the statutory range" is proper. *People v. Musgrave*, 2019 IL App (4th) 170106, ¶ 56. Under this standard, we give "substantial deference to the trial court's sentencing decision because the trial judge, having observed the defendant and the proceedings, is in a much better position to consider factors such as the defendant's credibility, demeanor, moral character, mentality, environment, habits, and age." *People v. Snyder*, 2011 IL 111382, ¶ 36. A sentence will only be reversed if it is "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense." *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 22     When sentencing a defendant, the trial court must carefully consider all factors in aggravation and mitigation, including "the defendant's age, demeanor, habits, mentality, credibility, criminal history, general moral character, social environment, and education, as well as the nature and circumstances of the crime and of defendant's conduct in the commission of it." *People v. Center*, 198 Ill. App. 3d 1025, 1033 (1990). There is "a strong presumption that the trial

court's sentence was based on proper legal reasoning, and a reviewing court should consider the record as a whole rather than a few isolated statements." *Musgrave*, 2019 IL App (4th) 170106, ¶ 55. The weight that a sentencing court gives to any proper factors " 'is left to the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion.' " *Musgrave*, 2019 IL App (4th) 170106, ¶ 56 (quoting *People v. Sturgeon*, 2019 IL App (4th) 170035, ¶ 104). A reviewing court "may not substitute its judgment for that of the trial court merely because it would have weighed these factors differently." *Musgrave*, 2019 IL App (4th) 170106, ¶ 56.

¶ 23    Causing or threatening to cause serious harm and the necessity to deter others from committing the same crime are aggravating factors that can warrant a more severe sentence within the statutory range. 730 ILCS 5/5-5-3.2(a)(1), (3), (7) (West 2022).

¶ 24    Trial courts are also directed to consider many statutory mitigating factors during sentencing. See 730 ILCS 5/5-5-3.1(a) (West 2022). These factors include: (1) the defendant did not intend to or did not cause or threaten serious physical harm, (2) the defendant does not have a criminal history, and (3) "[t]he character and attitudes of the defendant indicate that he is unlikely to commit another crime." 730 ILCS 5/5-5-3.1(a)(1), (2), (7), (9) (West 2022). Notably, "an abusive childhood [and] mental-health problems *** are not set forth in the list of mitigating factors in section 5-5-3.1(a) of the Unified Code that 'shall be accorded weight in favor of withholding or minimizing a sentence of imprisonment.' " *People v. Brunner*, 2012 IL App (4th) 100708, ¶ 64 (quoting 730 ILCS 5/5-5-3.1(a) (West 2006)); see also *People v. Holman*, 2014 IL App (3d) 120905, ¶ 75 (A "trial court [is] not required to view [the] defendant's history of mental health issues *** or [the] defendant's troubled childhood as mitigating in nature."). Additionally, "[a]lthough the Illinois Constitution requires a court to consider a defendant's rehabilitative

potential, it does not require the court to give greater weight to rehabilitation than to the seriousness of the offense." *People v. Baker*, 241 Ill. App. 3d 495, 499 (1993).

¶ 25      In this case, defendant pleaded guilty to indecent solicitation of a child (720 ILCS 5/11-6(a) (West 2022)) and traveling to meet a child (720 ILCS 5/11-26(a) (West 2022)), both Class 3 felonies. The applicable sentencing range for these offenses is a sentence of imprisonment of "not less than 2 years and not more than 5 years" (730 ILCS 5/5-4.5-40(a) (West 2022)) and an MSR term of six months (730 ILCS 5/5-4.5-40(l), 5-8-1(d)(3) (West 2022)). However, defendants who commit these offenses are eligible for probation not exceeding 30 months. 730 ILCS 5/5/-4.5-40(d) (West 2022). The legislature has directed trial courts to impose a sentence of probation on an offender unless the court believes that (1) the defendant's imprisonment "is necessary for the protection of the public" or (2) "probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice." 730 ILCS 5/5-6-1(a)(1), (2) (West 2022). Here, the court found the latter.

¶ 26      We begin with the applicable presumptions: (1) the sentence is proper because it is within the statutory range and (2) the trial court based its sentencing determination on proper legal reasoning. See *Musgrave*, 2019 IL App (4th) 170106, ¶¶ 55-56. We see no reason to discard these presumptions. The record in this case shows that the court carefully considered all the applicable factors in aggravation and mitigation and concluded that the former outweighed the latter, and thus, probation would deprecate the seriousness of defendant's conduct and be inconsistent with the ends of justice. Moreover, defendant does not argue on appeal that the court considered any improper factors. Rather, defendant argues only that the court improperly weighed the factors, giving insufficient weight to the mitigating factors. We cannot and will not reweigh the sentencing factors absent a clear abuse of discretion. See *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. There

was no abuse of discretion here.

¶ 27 Defendant argues that the trial court failed to take into consideration defendant's employment, support for his mother and his stepchildren, hardships during childhood, and lack of criminal history. However, " '[a] trial court is presumed to have considered all of the relevant evidence of mitigation before it.' " *People v. Somers*, 2012 IL App (4th) 110180, ¶ 24 (quoting *People v. Bailey*, 409 Ill. App. 3d 574, 594 (2011)). Moreover, the court explicitly "acknowledge[d] that there are mitigating factors in this case" and specifically noted that defendant had no prior criminal record and was employed. Though the court did not explicitly discuss defendant's childhood abuse and trauma, the court, as indicated above, was not required to consider defendant's traumatic childhood as an inherently mitigating factor (*Holman*, 2014 IL App (3d) 120905, ¶ 75) nor give greater weight to defendant's rehabilitative potential than any other factor (*Baker*, 241 Ill. App. 3d at 499).

¶ 28 Defendant next contends that his sentence of imprisonment is excessive because there was no actual threat of harm to any victim, as the "minor" involved in the offense was actually a law enforcement officer portraying a 14-year-old girl on social media. This argument misses the point. The trial court explicitly stated that it considered these facts as part of the context and seriousness of the offense itself, rather than the threat of harm to any victim. Moreover, it is defendant's conduct and intent that his sentence is penalizing; defendant intended to cause harm to a 14-year-old girl by engaging in illegal sexual conduct, providing her with alcohol and potentially bringing brass knuckles and duct tape to their meeting. While there was no actual 14-year-old girl to be harmed in this case, that was not due to defendant's behavior—it was merely chance that defendant was messaging a fake social media profile, rather than an actual 14-year-old girl.

¶ 29 Lastly, defendant argues that the trial court erroneously found that he did not appreciate the seriousness of the charges, so that a sentence of probation would deprecate the seriousness of the offense. The record belies this argument. The letters submitted by defendant's friends and family insisted that defendant was innocent and are inconsistent with his guilty plea. The sex offender evaluation conducted in February 2024 reflected that defendant denied and minimized any deviant or problematic behaviors, to the point that it became an obstacle to completing the evaluation. Defendant's letter from March 2024, where he wrote, "What I am being accused of is extremely repugnant and abhorrent," likewise arguably shows a failure to accept responsibility, as he used the term "accused of" rather than "did." We acknowledge, however, that this choice of words may be due to a translation from Spanish to English. It is true that in defendant's interview with the probation department in June 2024, he expressed remorse and an intent to atone for his crimes. However, at the sentencing hearing in August 2024, his statement in allocution only consisted of two sentences, where he attempted to justify the presence of alcohol and duct tape in his car, again deflecting responsibility for his crime. This explanation, moreover, conflicted with his prior explanation for the duct tape and brass knuckles, which reasonably gave rise to the court's doubt of defendant's truthfulness. The court's finding that defendant continued not to appreciate the seriousness of his conduct was reasonable, as was the court's conclusion that a sentence of probation would fail to acknowledge the gravity of defendant's conduct. As a result, the court's conclusion that probation would deprecate the seriousness of the offense (730 ILCS 5/5-6-1(a)(2) (West 2022)) was not an abuse of discretion.

¶ 30 The trial court ultimately considered all of the facts and found that the aggravating factors—the seriousness of the offense, defendant's failure to take responsibility, his conflicting explanations casting doubt on his honesty, and the presence of alcohol, duct tape, and brass

knuckles in defendant's vehicle—outweighed the mitigating factors. As discussed above, these are proper factors, and we will not reweigh them on appeal. See *Musgrave*, 2019 IL App (4th) 170106, ¶ 56. As defendant's sentence is not "greatly at variance with the spirit and purpose of the law, or manifestly disproportionate to the nature of the offense" (*Stacey*, 193 Ill. 2d at 210), the court did not abuse its discretion in imposing a three-year prison sentence.

¶ 31                                   III. CONCLUSION

¶ 32        For the reasons stated, we affirm the trial court's judgment.

¶ 33        Affirmed.